Awilda **RAMIREZ POMALES,** et al., Plaintiffs,

v.

**BECTON DICKINSON & COMPANY, S.A.,** et al., **Defendants.**

**Civ. No. 78–2327 HL.**

United States District Court, D. Puerto Rico.

Sept. 24, 1986.

On Motion for Directed Verdict Oct. 3, 1986.

Ernersto Maldonado Perez, Maldonado & Ortiz, San Juan, P.R., Santurce, P.R., Carlos A. Ortíz Morales, Santurce, P.R., for plaintiffs.

Ernesto Rodriguez Suris, Miranda Cardenas, Otero, De Corral & Rodriguez, Old San Juan, P.R., Brian P. Mullen, New York City, for defendants.

Paul E. Summit, Orans, Elsen & Lupert, New York City, for Fairleigh S. Dickinson, Jr.

OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiffs, approximately seventy five individuals, are Puerto Rico residents and former employees of a thermometer manufacturing plant in Juncos, Puerto Rico operated by various subsidiaries of Becton Dickinson and Co.[1] Plaintiffs filed this diversity action against defendants; Becton Dickinson and Co. ("BD"), a New Jersey corporation and parent company of the subsidiaries operating the thermometer plant in Juncos, Puerto Rico, and Wesley Howe, director and officer of BD. Plaintiffs claim defendants negligently failed to provide a safe work environment at the thermometer plant.

Defendants have filed a Motion for Summary Judgment claiming Howe in his capacity as BD director and officer lacked sufficient personal involvement with safety procedures at the Juncos plant to be liable for negligence and BD is a "statutory employer" immune from liability pursuant to Puerto Rico's Workmen's Compensation laws or, alternatively, BD had no duty to provide a safe work environment at the Juncos plant cannot be held liable for negligence. Defendants have also filed a Motion for Partial Summary Judgment on the grounds that various plaintiffs are barred from suit by the statute of limitations. We find there remains a question of material fact as to the liability of Howe and BD for negligence and DENY the Motion for Summary Judgment. The Motion for Partial Summary Judgment is GRANTED.

## I. FACTS

Since 1958, BD as parent company, created various subsidiary companies to operate the thermometer manufacturing plant in Juncos, Puerto Rico. From 1958 to 1964 the plant was operated by Becton Dickinson & Co., S.A. ("BDSA"), from 1964 to 1978 by Becton Dickinson of Puerto Rico, Inc.

("BDPR") and B–D Thermometer Company ("BDTC") (collectively the subsidiary companies are herein referred to as "BDPR"). Plaintiffs were employed at the Juncos plant for various lengths of time from the plant opening in 1958 through the early 1970s.

BDPR is directed by a local manager, a production manager, a plant engineer, and various supervisors. The local manager reports directly to a BD director or officer. From 1960 to the beginning of 1965 the BDPR plant manager reported to Wesley Howe, who at that time served as a BD director and BDPR officer. In January, 1965 Howe was given a promotion within BD and was no longer the person to whom BDPR management reported. Nonetheless, Howe remained an officer of BDPR until 1978 and continued to receive reports about the operations of the Juncos plant.

Initial operations at the BDPR plant in Juncos were limited to engraving thermometers. The plant would receive thermometers already filled and sealed with mercury. Plant employees would then mark the thermometers with an engraved scale and the Becton Dickinson trademark. In 1962 BD began preparations to expand the Juncos plant to include the actual manufacture of thermometers. By 1964 the thermometer manufacturing process had been transferred to Juncos from a BD plant in Columbus, Kansas. In 1965 a construction project was undertaken at the plant to better accommodate the manufacturing of thermometers.

Following the construction project, in 1966, the safety of the Juncos plant came under suspicion when a sequence of employees reported to the State Insurance Fund and were hospitalized and diagnosed with mercury poisoning.[2] The plant was

---

1. Family members of the former employees have also filed as plaintiffs in this action.

2. Defendants admit that an increased quantity of toxic mercury vapors escaped into the air during the construction.

investigated by Dr. Arnaldo Roldán, Director of the Occupational Health Division of the Commonwealth Department of Health, who threatened to shut it down.[3] In response to the situation, Howe and other BD officials sent Joseph Schanel, head of BD's Safety Engineering Department, and Dr. Horace Gerarde, BD's medical director to investigate the plant.[4] BD also hired Dr. Morton Corn as a consultant to evaluate the situation and make recommendations.[5] In 1967, local BDPR management, with the aid of Dr. Gerarde and Dr. Roldán, began to implement the safety recommendations made in Dr. Corn's report.

Plaintiffs claim they have been permanently injured by over exposure to mercury resulting in mercury poisoning. Mercury poisoning can result in decreased muscle coordination, trembling throughout the body, inflammation of the gums, emotional instability and miscarriages in pregnant women.

Defendants' Motion for Summary Judgment raises the issue whether either BD or Wesley Howe had a duty, or created a duty, to provide a safe working environment at the Juncos plant, and, if such a duty existed, were they negligent in their performing the duty.

## II. WHETHER BD, AS A PARENT COMPANY OF BDPR, AND HOWE AS OFFICER AND DIRECTOR OF THE PARENT COMPANY HAVE A DUTY TO PROVIDE A SAFE WORKING ENVIRONMENT AT BDPR.

■ Plaintiffs' claim of negligence against defendants is governed by the damages provision of the Puerto Rico Civil Code, Article 1802, and Puerto Rico's Workmen's Compensation laws, 11 L.P.R.A. 1 et seq. *See Erie Railroad v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (when state law governs a diversity action in federal court). Article 1802 of the Civil Code, 31 L.P.R.A. sect. 5141, provides:

A person who by act or omission causes damages to another through fault or negligence shall be obliged to repair the damage so done.

To state a claim for negligence under this provision of the Civil Code a plaintiff must establish three elements: 1) a negligent or wrongful act or omission, 2) proof of damages, and 3) a causal relationship between the damage and the action or omission of another person. *Hernandez v. Fournier*, 80 P.R.R. 94, 96–97 (1957).[6]

Unlike the prima facie case for a tort claim at common law which requires plaintiff to establish a duty on the part of defendant, a plaintiff claiming damages under civil law is not required to prove a duty as an essential element of the claim.[7] In

---

**3.** In 1967 Dr. Roldán was hired by local BDPR management to serve as "in house" medical advisor.

**4.** Dr. Gerarde travelled frequently to Puerto Rico in 1966 and 1967 to monitor the situation and report to Howe and other BD officers on his findings.

**5.** Dr. Corn found the Juncos plant to be a serious health hazard. Summarizing his findings he states in his report:

... Mercury vapor in air was found to be present in all locations in the plant, including administrative offices, at concentrations at or above the Threshold Limit Value of 0.1 mg/m³. Background concentrations in the plant averaged twice the T.L.V. Exposure of operators at selected locations were as five times the T.L.V. for long periods of time. Short term exposures at selected locations were up to twenty times the T.L.V. 'Weight-

ed' exposures of individuals were not assessed.

**6.** The Supreme Court of Puerto Rico has criticized past cases which sought "to solve civil law problems through common law principles," and has mandated that "nowadays ... in Puerto Rico, the law in the field of damages is governed both in form and in content by the civil law system." *Valle v. American Insurance Co.*, 108 D.P.R. 692, 695–97 (1979). The First Circuit agrees that Civil law problems should be analyzed first by Spanish Civil Code authorities, then by analogy to common law. *Reyes Cardona v. J.C. Penney Co., Inc.*, 694 F.2d 894, 896–897 (1st Cir.1982).

**7.** Despite the fact that proof of "duty" is not required to state a claim for negligence, the concept is not unknown to civil law. Civil law "duty" conveys the concept of a "social duty not to harm others." In *Perez Escobar v. Collado*, 90

this case, however, plaintiffs must establish a specific duty on the part of BD and Howe in order to make out a claim for negligence against them. Proof of a duty is required here because plaintiffs' claim is against third party defendants rather than BDPR, their direct employer, and because their claim is governed not only by the Civil Code provision for damages, but also by Puerto Rico's Workmen's Compensation laws, 11 L.P.R.A. sects. 1 et seq.

The direct employer has a nondelegable duty to provide its employees with a safe work environment. 29 L.P.R.A. sect. 361e; *Barrientos v. Government of the Capital,* 97 P.R.R. 539 (1969); *Muñiz v. National Can,* 737 F.2d 145 (1st Cir.1984); *see also, Love v. Flour Mills of America,* 647 F.2d 1058 (10th Cir.1981). In addition, employers operating in Puerto Rico are required to contribute to employee insurance through the Commonwealth State Insurance Fund. The Workmen's Compensation law provides that an employee injured on the job is automatically entitled to compensation from the State Insurance Fund without proving fault by the employer. 11 L.P.R.A. sect. 2, 2a, 3, 4a. In exchange for contributing to this no-fault insurance, employers are protected from unlimited liability. The Workmen's Compensation law limits the amount an injured employee may recover and provides that compensation through the State Insurance Fund is the employee's exclusive remedy. 11 L.P.R.A. sect. 21; *see Ruiz Diaz v. Vargas Reyes,* 109 D.P.R. 761 (1980).

■ In order to uphold the law and further the policy of the Workmen's Compensation law an employee who chooses to sue the parent company or officer for negligence rather than filing a workmen's compensation claim against the direct employer, must show that the parent company or

officer owed the employee a specific duty and was negligent in performing that duty. *Muñiz v. National Can Corp.,* 737 F.2d 145 (1st Cir.1984); *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902 (1st Cir.1980); *Santiago v. Becton Dickinson,* 571 F.Supp. 904 (D.P.R.1983); *see* 11 L.P.R.A. sect. 31 (third party liability). A parent corporation may be liable for unsafe working conditions at the subsidiary only if the parent assumed a duty to act by affirmatively undertaking to provide a safe working environment at the subsidiary. *National Can, supra,* at 148. Such an undertaking may be express as by contract between parent and the subsidiary, or may be implicit in the conduct of the parent. *Id.* A corporate officer may be found liable only if he or she had direct personal involvement in a decision or action which is causally related to plaintiff's injury. *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902 (1st Cir.1980).[8] Corporate officers have been found personally liable in situations where they directed, sanctioned, or actively participated in the challenged corporate activity. *Id.; Lobato v. Pay Less Drug Stores,* 261 F.2d 406, 408–409 (10th Cir.1958); *Marks v. Polaroid Corp.,* 237 F.2d 428, 435 (1st Cir.1956).

This court-made rule, restricting suit against a third party parent company, prevents the demise of the Workmen's Compensation scheme. Without the rule requiring a showing of a specific duty on the part of the parent company, an employee could by-pass the exclusive remedy provision of the Workmen's Compensation law and hold the parent company to unlimited liability; the employee's direct employer could, with impunity, shift the burden of maintaining a safe working environment to the parent company; and subsidiary employers operating in Puerto Rico would have no incentive to contribute to the State

---

P.R.R. 785, 788–790 (1969), the Puerto Rico Supreme Court explained:

> Sect. 1802 assumes that in human society every man owes to his fellow creature that degree of care and vigilance as will enable him to enjoy his life with safety ... the obligation to pay damages for a wrongful act flows, in the quasi-delictive sphere, for the

lack of prudence or diligence which is normally due in the ambit of human coexistence. (citing *Pagán v. Guardiola,* 78 P.R.R. 372, 374 (1955), IV–11 Puig Pina, *Tratado de Derecho Civil Español* 571 (1951).)

**8.** This standard applies to officers and directors of both the direct employer as well as the parent company.

Insurance Fund if their employees could avoid the compensation law by seeking unlimited liability against the parent company.

In their Motion for Summary Judgment defendants claim that local BDPR management was fully responsible for maintaining safe working conditions at the Juncos plant and that neither BD or Howe were sufficiently involved with the safety procedures to be held liable for negligence. Summary judgment is proper only if on the pleadings, affidavits and other documentary evidence submitted there was no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Though the evidence supporting a duty on the part of BD and Howe is scant we, nonetheless, find there remains a material question of fact on this issue.

## A. BD'S DUTY

BD did not expressly agree to take charge of assuring a work environment at the Juncos plant. However, the company's involvement with the operations to transfer thermometer production to Puerto Rico and expand the Juncos plant raises a question of fact whether BD acted affirmatively creating a duty to assure safe conditions at BDPR.

By 1964 when thermometer manufacturing operations began at the Juncos plant, the directors and officers of BD were well aware of the risk of mercury spillage in the course of thermometer production and the danger of mercury contamination from the toxic vapors. BD had operated a thermometer manufacturing plant in Columbus, Kansas, from 1949 through 1964, which was plagued with mercury vapor problems. Various BD engineers and other BD personnel studied the problem and recommendations were made for safer working conditions at the plant. In 1964 the Columbus plant was closed and all thermometer production operations were transferred to Puerto Rico.

BD officers and other personnel from the central offices were intricately involved with the plans to transfer thermometer manufacturing operations to Puerto Rico and to expand the Juncos plant to accommodate thermometer production. Designs for the expansion were drawn at the central BD headquarters; BD engineers travelled to Puerto Rico with instructions on the proper equipment, in particular, the proper air conditioning units essential for purifying the air of mercury vapors; all contractors hired for the expansion were approved by the BD central office; and once the plant was completed a BD official from the Columbus plant came to Puerto Rico to train the Juncos employees. Despite BD officials' knowledge of mercury poisoning and their involvement with the start-up operations of thermometer manufacturing at the Juncos plant, there is little indication that BD informed BDPR of safety precautions and procedures.

The fact that BD officials were aware of necessary safety precautions to prevent mercury contamination through their experience with the Columbus plant and were involved in the transfer of operations from Columbus to Juncos is sufficient evidence to suggest that BD had a duty to assure a safe work environment at the Juncos plant, or at the least a duty to inform the local management of proper safety procedures. Defendants have failed to present evidence to refute such a duty.[9]

## B. HOWE'S DUTY

A factual issue also exists whether Howe was sufficiently involved with operations at the Juncos plant to have created a duty to

---

9. To support their claim that BD had a duty to maintain a safe working environment at the Juncos plant, plaintiffs emphasize the fact that BD hired Dr. Gerarde to monitor and evaluate the situation at BDPR and that Dr. Gerarde continued to perform this function during 1966 and 1967. This action indicates BD's concern for the situation at the Juncos plant. However, we are hesitant to find that it raises an issue whether BD took an affirmative step to assure the safety of the plant.

assure plant safety. Howe has a background in engineering and supervised various BD plants, including the plant at Columbus, Nebraska. Howe served as BDPR supervisor from the opening of the plant in 1958 through 1965. In the early years of BDPR operations local BDPR managers sought Howe's approval for even the slightest decisions. Howe authorized requests on letterhead design and Christmas parties to paint for the building and air conditioning units. Howe also served as supervisor of the plant during the planning stages of plant expansion.

Though the evidence supporting a duty on the part of Howe is slim, we find that the close supervisory role he played when the plant first opened and the fact that he continued as Supervisor during the crucial period of planning for plant expansion raises a question of whether he directed, sanctioned or actively participated in decisions concerning plant safety.

## C. WHETHER BD AND HOWE WERE NEGLIGENT IN PERFORMING THEIR DUTY.

We have found a question of fact remains whether BD and Howe owed a duty to plaintiffs, and we also find an existing issue whether defendants were negligent in performing their duty. Abundant evidence in the record indicates that BD and Howe knew the dangers of mercury contamination and knew the appropriate safety measures to diminish harmful mercury vapors. However, little evidence exists that BD officials or Howe informed local management of the danger or of the proper safety precautions in order to place the local officials in a position to take responsibility for a safe work environment. If such information were withheld defendants would be negligent by omission and if inadequate safety measures were authorized they would be negligent by their actions.

## III. WHETHER BD IS A STATUTORY EMPLOYER UNDER THE PUERTO RICO WORKMEN'S COMPENSATION ACT.

■ BD claims it is a "statutory employer" entitled to the protection of Puerto Rico Workmen's Compensation laws. A statutory employer has been defined as a general contractor who maintains an employment relationship with the injured employee of an insured subcontractor. *Ruiz Diaz v. Vargas*, 109 D.P.R. 761 (1980); *Lugo Sanchez v. Puerto Rico Water Resources Authority*, 105 P.R.R. 1015 (1974). See *Santiago v. Becton Dickinson & Co., S.A.*, 571 F.Supp. 904, 907 (D.P.R.1985). A statutory employer has also been held to be an owner of a particular site which is leased to another party; as in a shipowner who charters the vessel to another company. *See Miro Martinez v. Compañia Transatlantica Española, S.A.*, 643 F.2d 897 (1st Cir. 1981); *Garcia v. Friesecke*, 597 F.2d 284 (1st Cir.1979). In addition, a parent corporation may be considered a statutory employer if the corporate veil can be pierced because the parent corporation so completely dominates the subsidiary that the two are actually a single entity. *See Muñiz v. National Can Corp.*, 737 F.2d 145, 147, n. 2 (1st Cir.1984); *see also, Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 905 (1st Cir.1980).

■ BD has presented no evidence to support its claim for statutory employer on any of the above theories.[10] The most logical theory to support the claim would be that BD and BDPR are in reality a single entity. In Puerto Rico "strong and robust" evidence of control by the parent company must be produced to pierce the corporate veil. *San Miguel Fertilizer Corp. v. P.R. Drydock & Marine Terminals*, 94 P.R.R. 403 (1967). The scant evidence presented to this issue indicates that BD and BDPR are two separate business entities and BD did not so dominate BDPR that the two

---

**10.** BD argues that because it is being sued for negligence in maintaining a safe working environment which is BDPR non-delegable duty it is entitled to the protection of a statutory employer. This argument goes to the issue whether BD owed a duty to plaintiffs for which it can be held liable, it is not applicable to defendant's claim of immunity as a statutory employer.

companies could be considered a single entity.[11]

## IV. WHETHER CERTAIN PLAINTIFFS ARE BARRED BY THE STATUTE OF LIMITATIONS.

Defendants, BD and Howe, have also filed a Motion for Partial Summary Judgment claiming certain plaintiffs are barred by the statute of limitations. The applicable statute of limitations in this case is Puerto Rico's one year limitations period governing actions for damages. *See Erie Railroad Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Article 1868 of the Puerto Rico Civil Code, 31 L.P.R.A. 5298, provides:

> The following prescribe in one year:
> 1 ...
> 2. Actions to demand civil liability for grave insults or calumny, and for obligations arising from the fault or negligence mentioned in section 5141 of this title, from the time the aggrieved person had knowledge thereof.

The limitations period accrues when the injured party not only has knowledge of the injury, but also knowledge of the cause, or "author" of the injury. *Colon Prieto v. Geigel*, 84 JTS 26 (1984); *Galarza v. Zagury*, 739 F.2d 20 (1st Cir.1984).

The one year statute of limitations is tolled when an injured worker files a timely claim—within three years of learning his injury is work-related—with the State Insurance Fund ("SIF"). *See* 11 L.P.R.A. Sect. 3.[12] The limitations period remains frozen while the administrative claim is pending. *Santiago v. Becton Dickinson & Co.*, 539 F.Supp. 1149 (D.P.R.1982); *Tro-*

*pigas De P.R. v. Tribunal Superior*, 102 D.P.R. 638 (1974). Once the agency's decision on the compensation claim becomes final the SIF has 90 days to file a claim against a third party for indemnification. If no claim is filed by the SIF within 90 days the employee has one year from that date to file his or her own claim against a third party. 11 L.P.R.A. sect. 32.[13] This exception to the one year statute of limitations does not apply to family members of an injured employee. Since a family member may file a claim against a third party at any time after the accident occurs, the statute of limitations as to them is not interrupted by the SIF proceedings and they must be filed within the year time limitation. *Franco v. Mayaguez Building*, 108 D.P.R. 192, 195 (1978); *El Dia, Inc. v. Superior Court*, 104 D.P.R. 149 (1975); *Santiago v. Becton Dickinson & Co., S.A., supra.*

Defendants claim that twenty five principal plaintiffs[14] are barred from suit because they failed to file a claim in this court within one year of realizing their injury or a claim with the SIF within three years of the injury; four principal plaintiffs are barred because they failed to file their claim in this court more than one year and 90 days after a final decision by the SIF; and 34 family members of principal plaintiffs are barred because they failed to file this claim within a year of realizing the injury. Plaintiffs fail to challenge defendants' claim on a factual basis; instead they attack the claim with two weak legal arguments.

---

**11.** We take note that the overwhelming weight of authority holds that a parent company and the subsidiary are separate entities and the parent can be sued in tort as a third party. *See* 2A Larsen, *Law of Workmen's Compensation*, Sect. 72.40 (1962); *Dorden v. C H. Herst*, 743 F.2d 1135, 1137 (5th Cir.1984); *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655 (6th Cir.1979); *Stoddard v. Ling-Temco-Vought, Inc.*, 513 F.Supp. 314 (C.D.Cal.1980).

**12.** 11 L.P.R.A. Sect. 3 states in pertinent part:
The claims in cases of occupational diseases shall be established within a period of time not to exceed three (3) years, reckoning from the date on which the workman learned of the

nature of the disability and its relation to the work, or could have learned through the exercise of reasonable diligence.

**13.** 11 L.P.R.A. sect. 32 states in pertinent part:
If the Manager should fail to institute action against the third person responsible as provided in the preceding paragraph, the workman or employee or his beneficiaries shall be fully at liberty to institute such action in their behalf without being obliged to reimburse the State Insurance Fund for the expenses incurred in the case.

**14.** Principal plaintiffs are those plaintiffs who were employed at the Juncos plant.

Plaintiffs argue that the statute of limitations was tolled as to all plaintiffs pursuant to Article 39, 32 L.P.R.A. sect. 253, because defendants were outside the jurisdiction. Article 39 provides.

If when the cause of action accrues against a person, he is out of the Commonwealth of Puerto Rico, the action may be commenced within the term herein limited after his return to said Commonwealth, and if, after the cause of action accrues, he departs from said Commonwealth, the time of his absence is not part of the time limited for the commencement of the action.

32 L.P.R.A. sect. 253. The policy behind this provision was to protect plaintiffs with claims against defendants who were beyond the reach of service. *See Marterie v. Dorado Beach Hotel,* 330 F.Supp. 860 (D.P. R.1971). In 1965 Puerto Rico passed a "long arm" statute, 32 L.P.R.A., App. II, Rule 4.7, making corporate defendants amenable to service and defeating the purpose behind Article 39. *Corning Glass Works v. Puerto Rico Water Resources Authority,* 396 F.2d 421, 422 (1st Cir.1968). Defendants BD and Howe were served pursuant to Puerto Rico's long arm statute and submitted to the jurisdiction of this court. We reject plaintiffs' argument that the one year limitations period was tolled because defendants were outside the jurisdiction.

Next, plaintiffs argue that the principal plaintiffs are not barred by the statute of limitations because they did not know until just prior to filing suit that BD and Howe were the "authors" of their injury. We do not find that the law of Puerto Rico requires the injured employee to know the exact culprit of the injury before the statute of limitations accrues; it is enough for the employee to know the cause of the injury. In this case the symptoms and cause of mercury poisoning were widely advertised at the BDPR plant, several employees had reported to the SIF, newspaper articles appeared in the major newspapers of wide distribution, and legislative hearings were held on the problem. Because of this widespread distribution of information we find that an employee who developed the symptoms of mercury poisoning would have known the cause of their illness.

The following 25 principal plaintiffs are dismissed from this action. These plaintiffs failed to file a claim with the SIF within three years after having terminated their work with BDPR. It follows that the claims of these plaintiffs are also prescribed by the one year statute of limitation. Plaintiffs have presented no evidence to the contrary.

María Acevedo-Millán
Adela Algarín-Hernández
Carmen Arzuaga-Pabón
María Carrión-Boria
Petra Dávila-Bonilla
Norma I. Delgado-Díaz
Delia Delgado-Roldán
Luz M. Feliciano-Ortiz
Octavio García-Alejandro
María D. García-Díaz
Ana H. García-Rodríguez
César A. Gómez Pagán
Nory H. Vázquez-Sostre
Rosa González-Cardona
Ada L. López-Quiñones
Ramona López-Rohena
Efraín Milian-Sierra
Rosa A. Morales-Camis
Luz E. Moreno-Mercado
Gervasia Pacheco-Feliciano
Lydia Pedroza-Vega
Manuela Salgado-Flores
Adelina Sánchez-Prado
Carmen D. Soto Hernández
Luz C. Toledo-Sánchez

The following four plaintiffs are barred by the statute of limitation because they waited more than a year and 90 days to file a claim in this court. For these plaintiffs the one year prescription period was interrupted while their claim was pending before the SIF and began to run when the SIF failed to file a claim within 90 days of the final decision:

María Acevedo-Millán
Providencia Adorno-Miranda
Ramona Betancourt-Rivera
Lillian Castro-Alverio

The following family members of principal plaintiffs are barred because they

failed to file a claim within a year of realizing the principal plaintiffs' injury.

Francisco Ramírez Pomales
Ramón Rivas
Adán Ortiz-Montañez
Tomás Muñoz-Echevarría
Rafael Pomales-Torres
Willaim González-Silvestriz
Santos Peña-Peña
Rafael Delgado-Morales
Miguel García-Hernández
Margarita Colón-Berríos
Ricardo González-Nazario
Ismael Velázquez-Rodríguez
Rosa González-Rivera
Ismael Mulero-Moreno
Pablo Gutiérrez-Espinosa
Carmen Escobar-Rivera
Juana González-Vélez
Félix Sepúlveda-Oquendo
Angel García-Escalera
Ramón Rodríguez-Pérez
Angel Algarín-Santa
José Peña
Eleuterio Rodríguez-Carrión
Miguel López-Pérez
Aramis Acosta-Vargas
Heriberto Rivera-Flores
F. Roldán-Martínez
Ismael Alejandro-Gutiérrez
Maximino Nieves-Hernández
Cruz Cuevas-Cuevas
Luis Díaz-Rivera
Félix Osorio-Fernández
Jorge Estrella-Oyola
Francisco Pagán-Vázquez

WHEREFORE, defendants' Motion for Summary Judgment to dismiss plaintiffs' claim against BD and Howe is DENIED, and their Motion for Partial Summary Judgment to dismiss various plaintiffs for failure to comply with the statute of limitations is GRANTED.

IT IS SO ORDERED.

1. Despite plaintiffs attorney's signature indicating acceptance of the Pre-Trial Order and despite the fact that the issue of limiting the scope of trial to the liability of Howe had been raised

## ON MOTION FOR DIRECTED VERDICT

During three days of trial, September 30 to October 2, 1986, plaintiffs, former employees of Becton Dickinson of Puerto Rico ("BDPR"), presented evidence in support of their claim of negligence in providing a safe work environment against defendants; Becton Dickinson Co. ("BD"), the parent company of BDPR; and BD employee and officer, Wesley J. Howe. At the close of plaintiffs' case defendants presented the Court with a Fed.R.Civ.P. 50(a) motion for Directed Verdict.

Plaintiffs have been given a full and fair opportunity to present a case of negligence against defendants, but failed to meet their burden. In our Opinion and Order denying defendants' Motion for Summary Judgment we indicated that the issue of liability was based on slim grounds. After listening to the testimony of plaintiffs'·witnesses and reviewing the documentary evidence we find defendants are entitled to a directed verdict.

## SCOPE OF ISSUE FOR TRIAL

The triable issue in this case is limited to the liability of defendant Wesley J. Howe. The Pre-trial Order governing the case states specifically:

> ... the initial trial will address the issue of whether defendant Wesley J. Howe (and vicariously through Howe, defendant Becton Dickinson and Company) negligently caused employees of the Juncos plant to be exposed to unsafe levels of mercury at partial points in time.

All parties signed the Pre-Trial Order in agreement.[1]

## STANDARD OF REVIEW

■ A directed verdict is proper "when the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion to the verdict." *Liberty Leather Corp. v. Callum,*

by both the Court and defendants at various times, plaintiffs never objected to the limitation until the day of trial. The objection was denied.

653 F.2d 694, 697 (1st Cir.1981) [citing *Brady, Administratrix v. Southern Railway Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234–35, 88 L.Ed. 239 (1943) ]. A mere scintilla of evidence favoring the nonmoving party is not sufficient to deny a directed verdict and submit the issue to the jury. *Id.*, quoting *Federal Insurance Co. v. Sauner*, 403 F.2d 971, 974 (1st Cir.1968). Instead, courts require substantial evidence favoring the case of the nonmoving party. This is particularly true where the party seeking a directed verdict does not bear the burden of proof. *Id.*

## BURDEN OF PROOF

Plaintiffs claim defendants were negligent in maintaining a safe work environment at the BDPR thermometer manufacturing plant in Juncos, Puerto Rico, causing them to be contaminated by mercury vapors. In order to state a prima facie case for this claim plaintiffs must show: 1) that Wesley J. Howe had a duty or created a duty, to provide a safe work place at Juncos; 2) that he was negligent in performing that duty; 3) that mercury vapors were present in the plant in unsafe proportions, and 4) that plaintiffs were injured by exposure to the mercury.[2]

The existence of a duty on the part of Howe is a question of law for the court; while the issue of negligence and proximate cause of plaintiffs' injury is a factual question for the jury. *See Federal Express Corp. v. State of R.I. Dept. of Transp.*, 664 F.2d 830 (1st Cir.1981). Plaintiffs' evidence shows that mercury vapors existed in the plant in unsafe proportions and suggests that some of the plaintiffs suffered injury. However, the evidence as to the issue of Howe's duty to assure a safe working environment at the Juncos plant, even when the evidence is viewed in a light most favorable to plaintiffs, is insufficient to state a duty. Hence, there can be only one conclusion to the verdict; no liability.

## SUFFICIENCY OF EVIDENCE TO SUPPORT A DUTY ON THE PART OF HOWE.

A corporate officer has a duty to an employee only if he or she had a direct personal involvement in a decision or action which is causally related to plaintiffs' injury. *Escudé Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902 (1st Cir.1980). Corporate officers have been found personally liable in situations where they directly sanctioned, or actively participated in the challenged corporate activity such that they could be called the "guiding spirit of the operation." *Id.*, at 907; *Lobato v. Pay Less Drug Stores*, 261 F.2d 406, 408–409 (10th Cir.1958).

Plaintiffs, here, have a particularly steep burden to prove a duty on the part of Howe because Howe was employed by BD, the parent company, rather than BDPR, the subsidiary and plaintiffs' direct employer. Under the law of Puerto Rico a direct employer has a nondelegable duty to maintain a safe work environment for its employees. 29 L.P.R.A. sect. 361e; *Barrientos v. Govt. of the Capital*, 97 P.R.R. 539 (1969). A parent company, and, in this case an employee acting on behalf of the parent company, has a duty to maintain safe working conditions at a subsidiary company only if it affirmatively undertakes to provide a safe environment; either expressly by contract or implicitly by acting to usurp the subsidiary's responsibility for safety. *Muñiz v. National Can Corp.*, 737 F.2d 145, 148 (1st Cir.1984).

---

**2.** Plaintiffs' claim is based on Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. 5141. Generally the Civil Code does not require a plaintiff to state a specific duty on the part of the defendant. However, in actions such as this one where plaintiffs filed a claim against the parent company rather than their direct employer to avoid the exclusive remedy provision of the Workmen's Compensation laws the First Circuit

and this Court have held that plaintiffs must establish a duty in order to prove liability. *Muñiz v. National Can Corp.*, 737 F.2d 145 (1st Cir.1984); *Escudé Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902 (1st Cir.1980); *see Awilda Ramirez Pomàles v. Becton Dickinson*, 649 F.Supp. 913 (1986) (policy for requiring a duty in cases of this sort).

Viewed in a light most favorable to plaintiffs the evidence indicates only that Howe closely supervised the operations of the Juncos plant and showed concern about the mercury vapor problems. This is insufficient to establish a duty upon which liability is based.

Prior to 1966 Howe served as the BD employee to whom local BDPR management reported. Howe evidently exerted tight control over the decisions of local BDPR management; requiring them to report their activities and to submit requests for expenditures for his authorization. The evidence also indicate that Howe was aware of mercury vapor problems at the BDPR plant.

Nonetheless, there is a complete absence of evidence that Howe was personally involved with or directed safety operations at the Juncos plant. In fact, certain communications between Howe and the local BDPR management establish the opposite conclusion; that it was local management who was in charge of safety programs and that Howe was unaware of the required safety precautions. On September 14, 1964 Joseph Sarchio, the local BDPR manager at the time, wrote to Howe expressing his anxiety about mercury vapor levels at the plant. He explained the programs he had undertaken to control the situation and asked for help from the central BD office. In Howe's response to Sarchio's letter he exhibits a lack of knowledge as to what precautions to take and deferred the problem to another BD employee, Joe Schanel, a BD employee apparently in charge of safety. In his letter, Howe refers to the actions taken by Sarchio in connection with the mercury problems as *"your* housekeeping system." This indicates that neither Howe nor BD was involved in directing the cleanup operations at the plant.

In 1965 a construction project was undertaken at the Juncos plant. During and following the construction safety at the plant came under suspicion and the Commonwealth Department of Health threatened to shut it down. In response to this situation, Howe sent Dr. Horace Gerarde, BD's medical director, to investigate the plant.

This decision to send Dr. Gerarde to investigate is the only evidence we have of an affirmative act by Howe in response to safety conditions at the plant. The decision evidences concern for the situation at the Juncos plant. However, it is not enough to establish that Howe became personally involved in directing safety operations at the plant, thereby creating a duty toward plaintiffs.

Following 1966, Howe's contact with operations at BDPR was minimal. He was given a promotion with BD and was no longer the person to whom local management reported. Though he remained in the board of BDPR and received reports from Dr. Gerarde and others on safety conditions at the plant, there is no evidence that he took any active role with the implementation of safety precautions at the plant. The evidence indicates that following 1966 Dr. Gerarde worked with local management and other BD employees, not with Howe, to clean up the Juncos plant.

We find that plaintiffs have failed to establish an essential element of their claim—that Howe owed a duty to plaintiffs. In accordance with the Pre-Trial Order, liability of BD is limited to the liability of Howe. We, therefore, find that plaintiffs have also failed to establish a claim against BD. Only one reasonable conclusion can be drawn from the evidence presented that neither Wesley J. Howe nor BD can be found liable.

WHEREFORE, defendants' motion for directed verdict is hereby GRANTED. The Clerk is ordered to enter judgment dismissing the complaint.

IT IS SO ORDERED.