**Awilda RAMIREZ POMALES, et al., Plaintiffs, Appellants,**

v.

**BECTON DICKINSON & CO., S.A., et al., Defendants, Appellees.**

**No. 86–1975.**

United States Court of Appeals, First Circuit.

Heard Sept. 10, 1987.

Decided Feb. 10, 1988.

Ernesto Maldonado, San Juan, P.R., for plaintiffs, appellants.

Donald R. Ware with whom Foley, Hoag & Eliot, Boston, Mass., Alfonso Miranda Cardenas, Miranda Cardenas & Cordova, San Juan, P.R., and Roy P. Weber, were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, GARTH,* Senior Circuit Judge, and BREYER, Circuit Judge.

GARTH, Senior Circuit Judge.

Plaintiffs are 75 former employees of a thermometer manufacturing plant in Juncos, Puerto Rico, plus 193 family members of former employees. On November 17, 1978, plaintiffs filed suit against the Becton, Dickinson Co. and the officers and directors of Becton Dickinson Co., et al., (hereinafter "BD"), alleging that they failed to meet their duty to provide a safe working environment at the Puerto Rico plant of BD's wholly owned subsidiary, Becton, Dickinson & Co., S.A. ("BDPR"). In specific, plaintiffs allege that they have suffered mercury poisoning.

On January 21, 1985, the district court dismissed the complaint against all of the individual officers and directors for lack of personal jurisdiction, except for one, Wesley J. Howe. BD, in its pre-trial statement, concedes that "Howe provided general administrative oversight of the plant's operations, and in that capacity approved its capital expenditures...." Howe thereafter became the President and Chairman of the Board of BD.

On February 24, 1986, BD moved for summary judgment. While this motion was pending, a pre-trial conference was held, which resulted in a comprehensive final pre-trial order, dated June 19, 1986. Among other things, the pre-trial order directed that the trial be conducted in phases. The first phase would determine

whether defendant Wesley J. Howe (and, vicariously through Howe, defendant Becton Dickinson and Company) negligently caused employees of the Juncos plant to be exposed to unsafe levels of mercury at particular points in time.

(A. 815).[1] The pre-trial order which was approved and executed by both parties, encompassed only the issues involved in the first phase of the trial, reserving all other matters for subsequent conferences and orders. (A. 815).

On September 25, 1986, the district court granted partial summary judgment against a number of plaintiffs holding that they were barred by the statute of limitations. In the same opinion the district court discussed BD's putative liability and denied the balance of BD's motion for summary judgment. *Ramirez Pomales v. Becton Dickinson & Co., S.A.,* 649 F.Supp. 913 (D. Puerto Rico 1986).

Trial on liability commenced before a jury on September 29, 1986. After impaneling the jury but before the trial had commenced, the district court ruled on BD's *in limine* motion which sought to implement the final pre-trial order by restricting the plaintiffs' evidence to proof of Howe's liability and proof of BD's liability through Howe's actions. The district court granted

---

* Of the Third Circuit, sitting by designation.

1. The pre-trial order also provided that if the plaintiffs prevailed in phase I a second trial will be held at which each individual plaintiff will be required to establish that he or she suffered actual injury and that such injury was caused by excessive mercury exposure for which defendants have been held responsible. In addition, each such plaintiff will then be required to prove his or her damages resulting from such injury. (A. 815).

BD's *in limine* motion and denied plaintiffs' request to modify the pre-trial so as to permit proof of BD's liability other than through Howe's acts.

After the fourth day of the trial, defendants moved for a directed verdict which the district court granted on October 3, 1986. *Id.* at 923. The district court found that

> there is a complete absence of evidence that Howe was personally involved with or directed safety operations at the Juncos plant. In fact, certain communications between Howe and the local BDPR management establish the opposite conclusion; that it was local management who was in charge of safety programs....

*Id.* at 925.

On appeal, plaintiffs raise a host of issues. With the exception of the following two issues, we find all of the other contentions presented by plaintiffs to be without merit. We turn therefore to a consideration of 1) the district court's refusal to amend the final pre-trial order so as to permit evidence of BD's negligence without reference to the actions of Howe; and 2) the district court's grant of a directed verdict in favor of BD.

## I.

### A.

■ Federal Rule of Civil Procedure 16, provides, among other things, that at the final pre-trial conference the participants shall formulate a plan for trial. It further provides that after any pre-trial conference held, an order shall be entered reciting the action taken. Fed.R.Civ.P. 16(d), (e). It is this order that controls the subsequent course of the action unless modified by a subsequent order. The final pre-trial order "... shall be modified only to prevent manifest injustice." Fed.R.Civ.P. 16(e).

■ The Notes of the Advisory Committee with respect to Rule 16, recognize that there is no limitation on the ability to modify pre-trial orders except in the case of the final pre-trial order, where "... a more stringent standard ['to prevent manifest injustice'] is called for." Fed.R.Civ.P. 16(e), advisory committee notes, 1983 Amendment. *See also* C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure* § 1526 (Supp.1987). The precedents of this court hold that a pre-trial order "controls the subsequent course of action ... and the trial court is endowed with discretion to exclude the nonconforming evidence." *Rodrigues v. Ripley Indus., Inc.,* 507 F.2d 782, 787 (1st Cir.1974). *Accord Jay Edwards, Inc. v. New England Toyota Distributor, Inc.,* 708 F.2d 814, 824 (1st Cir. 1983); *Simonsen v. Barlo Plastics Co.,* 551 F.2d 469, 471 & n. 3 (1st Cir.1977).

■ Other courts, subscribing to the same principles, have ascribed to the trial court, a broad discretion to preserve the integrity and purpose of the pre-trial order, *see Sherman v. United States,* 462 F.2d 577, 579 (5th Cir.1972), and have refused to disturb district court rulings which prevent the introduction of otherwise relevant evidence, unless it is demonstrated that the district court has so clearly abused its discretion that its action could be deemed arbitrary. *See Wallin v. Fuller,* 476 F.2d 1204, 1208 (5th Cir.1973). Moreover, for pre-trial procedures to continue as viable mechanisms of court efficiency, appellate courts must exercise minimal interference with trial court discretion in matters such as the modification of its orders. *See Syracuse Broadcasting Co. v. Newhouse,* 295 F.2d 269, 274 (2d Cir.1961). With these principles serving as a backdrop to our analysis we now examine whether the district court abused its discretion in refusing to modify the final pre-trial order approved by the plaintiffs and BD.

### B.

■ In addressing the district court's exercise of discretion, it is helpful to understand the context in which the controversy between the parties arose. The plaintiffs here could not seek damages from their employer, BDPR[2] and thus sought to im-

---

2. Under The Puerto Rico Workmen's compensation law P.R.Laws Ann. tit. 11 § 21 (1968) plaintiffs are precluded from recovering against BDPR beyond their compensation award. *See*

pose liability on the parent corporation, BD. A controlling precedent of this court, *Muniz v. National Can Corporation,* 737 F.2d 145 (1st Cir.1984), had earlier established the principles upon which such liability can be founded. We discuss *Muniz* in greater detail in a later portion of this opinion which deals with the directed verdict claim made by the plaintiffs. At this point however, it is sufficient to note that *Muniz,* in essence, required that for a parent corporation to be liable for the negligence of a subsidiary, the parent corporation had to assume a duty to act by affirmative undertakings.

■ The district court, obviously with *Muniz* in mind, had questioned, in the early stages of the litigation, whether such a duty to act and whether such affirmative undertakings by BD could be established without reference to the acts of the individual defendant, Howe. At least by October 10, 1985, nine months prior to the final pre-trial order of June 19, 1986 and almost a year before the district court's *in limine* ruling on September 29, 1986 (A. 1258) granting BD's motion to limit evidence presented at trial to the scope of the pre-trial order, the district court had determined that BD's liability was wholly contingent upon Howe's acts.

Thus, counsel for plaintiffs who later professed to be surprised by the language of the final pre-trial order which limited the scope of the trial, was on notice for almost a year before the trial began that the case would be tried on a theory which linked BD's liability to the liability of Howe. Indeed, at the status conference held on October 10, 1985, the district court made explicitly clear that BD's liability was dependant solely upon Howe's liability. The district court stated:

> I mean, I dismissed [BDPR], I did not dismiss [BD]. It is just because of Howe's participation. If Howe is dismissed, Becton Dickinson could have been dismissed there too, because it is an agency liability....[3]

The district court later reiterated this point, stating: "[A]s I say, Becton Dickinson, United States of America has stayed as a defendant because of Mr. Howe's involvement or alleged involvement in this case." *Id.* [4] Counsel for plaintiffs was present during this status conference, yet significantly, he at no time objected to the substance of the court's statements. Nor did he seek to correct the district court in what he now claims was an erroneous view of the issue at trial.

Moreover, plaintiffs' counsel did not object to the language of the final pre-trial order adopted nine months after the status conference and some three months before trial. As earlier noted, the final pre-trial order, implemented the district court's view of the issue to be tried during the first phase of the trial, by stating that the issue to be tried was whether Howe (and vicariously through Howe, BD) negligently caused BDPR employees to be exposed to unsafe levels of mercury. Only after BD's *in limine* motion to limit the evidence at trial, (a motion made to conform the proofs at trial to the final pre-trial order) did plaintiffs request that the district court amend the pre-trial order. Even then, plaintiffs filed no formal motion.

In denying the request to amend the final pre-trial order, the district court rea-

*Muniz v. National Can Corporation,* 737 F.2d 145, 147 n. 1 (1st Cir.1984).

**3.** Transcript of October 10, 1985 Status Conference at 8.

**4.** The transcript also attributes the following statement to BD's counsel. However, the transcript designation may be in error. At the hearing at which the district court denied plaintiff's request to amend the final pre-trial order, the district court indicated that the language quoted below was its own. App. at 1256, 1257 ("[I]t's really the Court that is talking there.")

> I was saying that the only reason why Becton, Dickinson and Company, when I say the parent corporation remains in the lawsuit, is because I found there was jurisdiction against Howe and therefore a theory of respondeat superior. If Howe has been dismissed, then all the defendants should be dismissed. So really the Mainland corporate liability of, if any hinges upon the liability of Howe.... Transcript of October 10, 1985 Status Conference at 8–9.

soned as follows: First, recognizing that the plaintiff's counsel claimed to have been surprised by the manner in which the issue was framed in the final pretrial order, the district court stated:

> Well, let me say this, I read that brief [plaintiffs'] and I read that area on the question of surprise. But also I remember that, and it appears in the transcript of that status conference that I myself addressed the issue at that point. The plaintiff didn't say anything, so they knew it from the very moment that I mentioned it there. Even if they didn't have it, even assuming for the purpose of argument, that he [plaintiffs' counsel] received the contents of the scope of the trial at that time, the transcript of that conference shows that I mentioned it, and there was no objection or any reply from the plaintiffs' counsel.

(A. 1255) Second, the district court, while it referred to a concept that since personal jurisdiction over BD was predicated on Howe's contacts with Puerto Rico, that liability must also be linked to Howe,[5] it went on to emphasize the basis of its ruling which appeared in the final pre-trial order:

> THE COURT: I have the transcript of that status conference held on October the 10th, 1985. At that time there were present for the plaintiff Mr. Maldonado and Mr. Ortiz Morales, and for defendant Mr. Alfonso Miranda Cardenas, and there the issue came about concerning the insurance company. And then I said, and I'm going to quote myself, as I say, Becton Dickinson U.S. of America has stayed as defendant because of Mr. Howe's—at that time I was pronouncing it "Howie", H-o-w-e-y and I've been told it's Howe—involvement in this case. Then defendant goes to Mr. Miranda Cardenas, but it's really the Court that is talking there.
>
> And I was saying that the only why [way] Becton Dickinson and Company, when I say the parent corporation re-

mains in the law suit is because I found there was jurisdiction against Howe, and therefore a period of respondeat to superior. If Howe had been dismissed and all, the defendant would have been dismissed. So, the main corporate liability, if any hinges upon the liability of Howe, which then would put us plain and clear that [Hartford Insurance] would be the carrier, even of Howe, et cetera.

> And I say that, I said that statement I know Mr. Miranda because I was the one that was pronouncing Howe's name as "Howie". So, it seems to be that at that point there was no objection or anything that would put the Court on alert as to any different proposition. And I have to state further, that when I issued the first opinion and order in this case concerning Becton Dickinson that was attached by the defendant clearly there, if it hasn't been for Mr. Howe's involvement the defendant would have been dismissed. There was no independent evidence other than by acting through this various corporate directors. I dismissed the complaint Mr. Dickinson, Mr. Becton, and only leaves defendant—personal defendant left was Mr. Howe.

> So, it seems to me that it appears to me that the cases would revolve around the liability of Mr. Howe, and of course, if he's liable then I have no doubt that he will bind his—the mainland company unless you can show me otherwise, or the evidence shows otherwise. But that's the way it appears to be and that's the way the pre-trial order was drafted and the way it was approved. So, we're going to limit the case to those issues, as set forth in the approved pre-trial order.

We are satisfied that the district court judge did not abuse his discretion in refusing to allow the final pre-trial order to be modified just prior to trial. As we have pointed out, plaintiff's counsel had been on notice long before the trial, that the district court (and apparently BD) viewed the issue

---

5. We do not address question whether the theory of personal jurisdiction upon which a defendant is haled into court, can act to limit the theory of liability can be asserted against the defendant. Although BD argues that personal jurisdiction must be valid as to every cause of action, Appellee's Brief at 23 n. 18, the issue of personal jurisdiction as it relates to substantive liability was not raised by the plaintiffs on this appeal.

of BD's liability as solely contingent upon the liability of Howe.

Furthermore, at oral argument before this court, counsel for plaintiffs could not point to any significant evidence that was excluded from the trial by the restrictive final pre-trial order. Indeed, the only excluded evidence to which plaintiffs referred was evidence of a local plant manager's report and evidence of matters concerning a BD thermometer plant in Nebraska—evidence not likely to be relevant to the liability of BD in Puerto Rico, regardless of the scope of the pre-trial order.[6]

■ Plaintiffs also argue that the district court's summary judgment opinion,[7] issued on September 25, 1986, after the signing of the pre-trial order, which analyzed the case in terms of BD's direct liability and not vicariously through Howe, of necessity modified the pre-trial order. We reject that argument for two reasons.

First, Rule 16(e) explicitly states that a pre-trial order can only be modified by a "subsequent order." Here no subsequent order specifically modifying the pre-trial order, was ever issued. Indeed the district court could not have issued such an order absent a finding that a failure to do so would work "manifest injustice." No such finding appears in the record and therefore the requirement of Rule 16(e) that "[t]he order following a final pre-trial conference shall be modified only to prevent manifest injustice" was not satisfied. Fed.R.Civ.P. 16(e).

Second, even if the district court's summary judgment opinion could be construed as suggesting a broader scope of the trial —a suggestion which we do not accept— the district court dispelled any such claim when it affirmed its intention to enforce the final pre-trial order in its September 29, 1986 ruling.

## II.

■ Plaintiffs also contend that the district court improperly granted a directed verdict in favor of BD. This court's standard for reviewing a district court's grant of a directed verdict was set forth in *Durford v. Sears, Roebuck and Co.*, 833 F.2d 407, 411–12 (1st Cir.1987):

> To sustain the court's direction of a verdict for defendants here, we must determine that the evidence produced at trial, viewed in the light most favorable to plaintiffs, would not have permitted a rational jury to reach any conclusion other than that the defendants were not liable.

A parent corporation's liability for the actions of a wholly owned subsidiary, in a case such as this one, hinges upon "whether [the] parent corporation has assumed primary responsibility for industrial safety at [the] subsidiary corporation's plant." *Muniz v. National Can Corporation*, 737 F.2d 145, 146 (1st Cir.1984). In *Muniz*, the plaintiff brought suit against the parent National Can Corporation (NCC) seeking recovery for damages he sustained while employed by its subsidiary National Can Puerto Rico, Inc. (NCPR). The district court entered judgment for NCC, the parent, concluding that the duty and control of safety matters at the subsidiary's plant was in the hands of the subsidiary, and that NCC was not liable because it had assumed no duty to the plaintiff. *Id.* at 147.

This court affirmed the judgment of the district court. Judge Wisdom, sitting by designation, writing for the *Muniz* court, explained that:

> The parent-shareholder is not responsible for the working conditions of its subsidiary's employees merely on the basis of parent-subsidiary relationship.... A parent corporation may be liable for unsafe conditions at a subsidiary only if it

---

6. We have reviewed the other evidence identified by counsel for the plaintiffs as having been excluded by the issue framed by the final pre-trial order. That evidence would not have supported the plaintiff's position that BD was liable. Indeed, much of the evidence addressed by plaintiff's counsel at oral argument was evidence which the district court had admitted at trial.

7. *Ramirez Pomales v. Becton Dickinson & Co., S.A.*, 649 F.Supp. 913 (D. Puerto Rico 1986).

assumes a duty to act by affirmatively undertaking to provide a safe working environment at the subsidiary.

\* \* \* \* \* \*

Because an employer has a nondelegable duty to provide safe working conditions for its employees, we do not lightly assume that a parent corporation has agreed to accept responsibility. Neither mere concern with nor minimal contact about safety matters creates a duty to ensure a safe working environment for the employees of a subsidiary corporation. To establish such a duty, the subsidiary's employee must show some proof of a positive undertaking by the parent corporation.

*Id.* at 148.

Thus, the plaintiffs had the obligation under the *Muniz* standard, to demonstrate by competent evidence, that BD had a duty to the plaintiffs—a duty which it assumed by positive affirmative undertakings to provide a safe working environment at its subsidiary, BDPR. The district court, in granting BD's motion for a directed verdict found: (1) that no evidence had been adduced demonstrating that Howe was personally involved with or directed safety operations at BDPR's plant; and (2) that the evidence presented by plaintiffs established just the opposite, i.e. "that it was local management who was in charge of safety programs." *Ramirez Pomales v. Becton Dickinson & Co., S.A.,* 649 F.Supp. 913, 925 (D.Puerto Rico 1986).

Under the *Muniz* standard and given the limitation of the pre-trial order in this case, the district court was bound to examine whether Howe had undertaken sufficient affirmative acts so that a rational jury could have concluded that he, and thus BD, had assumed primary responsibility for safety at the BDPR plant. The evidence which the plaintiffs cite in their brief in urging that the district court erred in directing a verdict against them, merely shows that Howe received reports concerning the safety of the plant and that for some time local BDPR management was required to submit expenditure requests to Howe for his authorization. Clearly this does not establish that Howe, and through Howe, BD, had assumed "primary responsibility" for plant safety as required by *Muniz. A fortiori* no positive affirmative undertakings sufficient to establish such a duty were proved. Indeed, in *Muniz* this court explicitly held that:

> Neither mere concern with nor minimal contact about safety matters creates a duty to ensure a safe working environment for the employees of a subsidiary corporation.

737 F.2d at 149.

Our independent review of the record has revealed nothing to refute the district court's conclusion "that it was local management who was in charge of safety programs." 649 F.Supp. at 929. The record, when read in the light most favorable to the plaintiffs essentially discloses no more than evidence that: (1) several officers and employees of BD were aware of the safety problems at BDPR; (2) BD provided BDPR with some assistance in evaluating and inspecting the safety conditions; and that (3) BD personnel were involved in the *initial* design of the BDPR plant, and in some start-up operations. This evidence, viewed in the light most favorable to plaintiffs, would not have permitted a rational jury to conclude that BD was liable under the *Muniz* standard. Thus the district court did not err in directing a verdict for BD.

### III.

Because the district court did not abuse its discretion in refusing to amend the final pre-trial order and in limiting the evidence to the issue framed therein, and because the district court did not err in granting BD's motion for a directed verdict, the judgment of the district court, dated October 3, 1986, will be AFFIRMED.