**O. AHLBORG & SONS, INC.**

v.

**INTERIOR SYSTEMS, INC.**

No. 86–54–Appeal.

Supreme Court of Rhode Island.

July 15, 1987.

Christophe Little, Tillinghast, Collings & Graham, Providence, for plaintiff.

Lauren E. Jones, Martin Aisenberg, Jones & Aisenberg, Providence, for defendant.

## OPINION

SHEA, Justice.

The sole question before the court in this appeal is whether there was a clearly written and expressed agreement to arbitrate between the parties. We conclude that there was an agreement to arbitrate between the parties under the rules of the American Arbitration Association, and for reasons other than those given by the trial justice we affirm the denial of the plaintiff's petition for arbitration brought pursuant to G.L.1956 (1985 Reenactment) § 10–3–4.

The plaintiff is O. Ahlborg & Sons, Inc. (Ahlborg), a Rhode Island construction company. The defendant and appellant before us is Interior Systems, Inc. (Interior), also a Rhode Island construction company. The record indicates that Interior was a subcontractor on Ahlborg's Westminster Place project.[1] Problems arose between the parties as the work progressed and Interior placed a mechanics' lien on the project. The filing of the lien caused the attorneys for the parties to enter into negotiations to resolve the dispute. The parties were having difficulty coming to an agreement on the method to be followed in arbitrating their differences.

After discussions between the attorneys, Interior's counsel prepared an agreement, executed by Interior, to resolve the dispute. By the terms of the agreement, Ahlborg was to pay Interior $54,783.40 representing progress payments, change orders, and partial retainage.[2] The parties further agreed that the balance of the retainage amounted to $28,302.90 plus certain extras. The written agreement provided that disputes between the parties "shall be arbitrated in accordance with the construction industry rules of the American Arbitration Association." In consideration of the payment and agreement to arbitrate, Interior was to release the mechanics' lien placed on the project.

On January 17, 1984, Interior's attorney forwarded to Ahlborg's attorney the proposed agreement executed by Interior along with an executed release of the mechanics' lien. The covering letter specifically stated: "Kindly hold the release in escrow until your client signs the enclosed agreement and I am furnished with a copy thereof. In the event you wish to modify the agreement, please contact me immediately."

On January 18, 1984 at 2:35 p.m., the release of the mechanics' lien was recorded and Ahlborg made payment of the amount called for in the agreement.

On January 19, 1984, the day after the lien release had been recorded, Ahlborg's attorney answered the letter of Interior's attorney by returning the agreement executed by Ahlborg with a covering letter indicating two changes had been made in the agreement and initialed by Ahlborg's counsel. These changes were of no consequence to this dispute.

Ahlborg's attorney's letter also stated: "We also have agreed that we will not arbitrate any remaining disputes strictly in accordance with the construction industry rules of the American Arbitration Association. We will not pay a fee to the Association and we will not use three

1. The record is composed of the pleadings and documents filed by the parties—no testimony was presented.

2. Retainage is a percentage of the total job price that is withheld by the general contractor until the entire job is completed and the project is accepted by the owner, at which time the retainage due each subcontractor is paid by the general contractor. The portion of the retainage that the agreement called for was half of the total ultimately due to Interior.

arbitrators. The two of us will make an effort to agree to a single arbitrator. We also will engage in complete and formal discovery prior to any hearings in an attempt to stipulate to as many facts as possible."

None of the provisions of the above quoted paragraph were interlineated or added into the agreement when it was executed by Ahlborg and returned, as had been done with the minor changes previously referred to. The agreement neither made reference to the letter nor incorporated its provisions in any way. The provisions for arbitration under the American Arbitration Association rules for the construction industry, as set forth in the agreement signed by Ahlborg, were not crossed out or changed in any way. On two subsequent occasions Ahlborg's attorney requested that Interior's attorney initial and return additional copies of the agreement that had been signed by Ahlborg. Each copy contained the arbitration provisions unchanged from those originally proposed by Interior's attorney.

In later correspondence Ahlborg's attorney asked Interior's attorney, "Please give me a call when you want to get together to prepare the arbitration agreement." Interior's response to that request, in a cover letter containing a second unchanged and fully executed copy of the agreement, was "I shall forward you a detailed claim before commencing arbitration."

Some time passed and Ahlborg and Interior were unable to resolve their remaining differences. In July 1984 Interior filed a demand for arbitration with the American Arbitration Association pursuant to the rules for the construction industry. In October 1984 Ahlborg filed a miscellaneous petition in Superior Court entitled "Petition for Arbitration" alleging that the parties had an agreement to arbitrate that was set forth in a written and executed agreement and in a letter from Ahlborg's attorney to Interior's attorney, both attached to the petition as exhibits. Ahlborg asserted that the exhibits constituted the entire agreement between the parties. It asked that the court order arbitration in the manner provided for in the exhibits filed with the petition rather than in accordance with the American Arbitration Association construction industry rules. In its answer to the miscellaneous petition, Interior denied that the letter of January 19 was part of the agreement.

The trial justice heard oral argument from the attorneys and reserved decision. She later rendered her decision finding that the letter of January 19 imposed additional conditions on the agreement, that it constituted a counteroffer that was not accepted by Interior "since silence does not constitute an acceptance of a counter-offer" and held that there was no final binding agreement to arbitrate. Therefore, the petition for arbitration was denied and dismissed.

Ahlborg argues before this court that the letter of January 19, 1984, was a counteroffer with regard to the method of arbitration.

Interior argues that a contract was formed either when Ahlborg executed and returned the agreement or when Ahlborg made the payment called for in the agreement or when Ahlborg recorded the discharge of the mechanics' lien or by any combination of these facts. After a review of the record and the exhibits, we conclude that Interior's position is the correct one.

We would first comment on the state of the record. As stated earlier no testimony was presented. The pleadings and exhibits filed in Superior Court and a transcript of the oral arguments presented to the trial justice are all that we have before us. During those arguments both attorneys made reference to the letters between counsel, and it appears to us that those letters and other exhibits were considered by the court. Therefore, we reject the argument advanced in Ahlborg's brief that since certain documents are not exhibits, they are therefore not included in the record before us. When parties agree to submit a case to the court on the basis of the pleadings and oral argument, it is only reasonable that we too consider any documents and papers referred to in that argument.

We cannot accept the trial court's conclusion that there was no agreement to arbitrate. This ignores both the fully executed agreement calling for arbitration and Ahlborg's attorney's letter of January 19 returning that agreement but suggesting an arbitration proceeding other than the one recited. Both clearly express an agreement to arbitrate any remaining differences. The disagreement concerns only the terms of the arbitration procedure, as Ahlborg's counsel conceded to us during oral argument.

Our review of the record and the argument of counsel brings us quickly to the conclusion that Ahlborg signified its acceptance of the written and executed contract not only by signing it but also by paying over to Interior a very substantial sum of money. And, most importantly, Ahlborg freed itself from the burden of the mechanics' lien by recording Interior's release of it. Ahlborg communicated its assent and acceptance of the contract by performing several express acts called for in the agreement that it had signed and did so in some instances well before its letter of January 19 in which it raised the question of arbitration under other than American Arbitration Association rules. By the time the January 19 letter was received by Interior, the agreement had been accepted and ratified by Ahlborg's actions and no "counteroffer" was possible.

The execution and return of the contract by Ahlborg alone would be sufficient evidence of assent. *See Dante State Bank v. Calenda*, 56 R.I. 68, 74–76, 183 A. 873, 876–77 (1936); *J. Weil & Co. v. Quidnick Manufacturing Co.*, 33 R.I. 58, 64, 80 A. 447, 449 (1911). Generally, one who "signs an instrument manifests his assent to it and cannot later complain that he did not * * * understand its content." *F.D. McKendall Lumber Co. v. Kalian*, 425 A.2d 515, 518 (R.I.1981). Therefore, although we affirm the result reached by the trial justice, we conclude that the reasoning was in error.

For these reasons, we conclude that the trial justice was correct in denying Ahlborg's petition for arbitration since we find that the parties were bound to arbitrate under the rules of the American Arbitration Association for the construction industry. Accordingly, the order and judgment appealed from is affirmed and the papers of the case are remanded to the Superior Court.