**E.H. ASHLEY & CO., INC. and Willow Associates, Plaintiffs, Appellants,**

v.

**WELLS FARGO ALARM SERVICES, etc., Defendant, Appellee.**

No. 90–1216.

United States Court of Appeals, First Circuit.

Heard June 6, 1990.

Decided July 16, 1990.

---

Dennis J. Roberts II with whom Roberts, Carroll, Feldstein & Peirce, Providence, R.I., was on brief, for appellants.

Matthew F. Medeiros with whom Neal J. McNamara and Flanders & Medeiros Inc., Providence, R.I., were on brief, for appellee.

Before BREYER, Chief Judge, COFFIN, Senior Circuit Judge, and CAMPBELL, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiffs-appellants, E.H. Ashley & Co., Inc. and Willow Associates (jointly, "Ashley"), have appealed from an order of the United States District Court for the District of Rhode Island on February 6, 1990, granting summary judgment in favor of defendant-appellee, Wells Fargo Alarm Services, a Division of Baker Protective Services, Inc. ("Wells Fargo").

In June 1985, Ashley contracted with Wells Fargo Services to obtain a burglar alarm system. The contract contained a limitation of liability clause. The clause stated that Wells Fargo was not an insurer and that it would not be liable for any of Ashley's "losses or damages ..., irrespective of origin, whether directly or indirectly caused by performance or nonperformance of obligations imposed by this contract or by negligent acts or omissions of Wells Fargo, its agents or employees." Under the clause, Ashley waived and released any rights of recovery against Wells Fargo and agreed that if Wells Fargo Alarm should be found liable for any losses or damages attributable to a failure of its systems or services in any respect, its liability would be limited to the annual charge paid by Ashley ($985) or $10,000, whichever is less.

In May 1988, a theft occurred at Ashley's place of business resulting in a claimed loss of $120,112, which claim was paid in full, less the $1,000 deductible, by Aetna Casualty and Surety Company ("Aetna"). Under the terms of the policy, Aetna was subrogated "to all rights of recovery for ... loss or expense against the persons, firms, corporations or estates which ... caused or contributed to" the loss—to the extent of Aetna's coverage of the loss. Aetna thereafter brought suit in the name of Ashley against Wells Fargo in Rhode Island Superior Court to recover the amount of its payment to Ashley. Aetna claimed that Ashley's loss was directly attributable to a defect in or negligent maintenance of the burglar alarm system installed by Wells Fargo and brought claims sounding in negligence and breach of contract.

Aetna claimed also that, as subrogee, it was not bound by the limitation of liability clause in its insured's contract with Wells Fargo. Alternatively, it argued that the limitation of liability clause was unconscionable and should, therefore, not be enforced against it.

In response to Wells Fargo's motion to dismiss for failure to state a claim upon which relief may be granted, the district court rejected Aetna's argument that its right of subrogation was not subject to the limitation of liability. It granted discovery, however, on the issue of unconscionability. Wells Fargo then moved for summary judgment; and the court ruled that, even viewing the facts in the light most favorable to Ashley, the contract was not unconscionable. It granted partial summary judgment to Wells Fargo, upholding the contract term limiting liability to $985. Wells Fargo then offered to pay Aetna that amount rather than litigate the issue whether it was liable at all under the contract. Accordingly, the judge issued an order conditioning its entry of partial summary judgment for Wells Fargo on Wells Fargo's payment of $985 to Aetna. Wells Fargo tendered the payment but Aetna refused to accept it.

Aetna then brought this appeal, asserting that the district court erred in granting Wells Fargo's motion for partial summary judgment for the reason that material

questions of fact remain with respect to (1) whether the limitation of liability clause in the contract for burglar alarm services is void and unenforceable as to Aetna, Ashley's subrogee, and (2) whether the contract is void as an unconscionable contract of adhesion.

Because we find that the grant of partial summary judgment against Aetna was proper, we affirm the decision of the district court.

DISCUSSION

■ Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Our review of dispositions by summary judgment is plenary. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990). Like the district court, we must view the entire record in the light most favorable to the party opposing summary judgment, and indulge all reasonable inferences in that party's favor. *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989).

■ The movant for summary judgment must first aver an absence of evidence to support the opposing party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both "genuine" (i.e., can properly be resolved only by a finder of fact because it may reasonably be resolved in favor of either party) and "material" (i.e., affects the outcome of the suit). On issues where the nonmovant bears the burden of proof, he must reliably demonstrate that specific facts sufficient to create an authentic dispute exist. *Garside,* 895 F.2d at 48 (citing and quoting, *inter alia, Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986), and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Aetna alleges first of all that *disputed issues of material fact* remain with regard to the enforceability against the insurer (who has been subrogated to the rights of its insured) of a limitation of liability clause in a contract entered into by its insured.

Aetna points, however, to no disputed issues of fact that bear on this question. Aetna's arguments instead challenge the legal conclusion of the district court that the limitation of liability clause in the contract between Ashley and Wells Fargo is enforceable against Aetna, the subrogee of Ashley's rights against Wells Fargo. The facts surrounding the formation of the contract are not in dispute. Accordingly, we treat this issue as an allegation that the district court erred in its legal ruling that the rights of a subrogee are limited by the rights of the subrogor.

■ The contention that Aetna, as subrogee of Ashley's rights under the contract, is not bound by the terms of the contract is frivolous. The law of Rhode Island governs the interpretation of the contract in question; and it is well settled in Rhode Island, as elsewhere, that an insurer, by a right of subrogation, steps into the shoes of the insured and can recover only if the insured could have recovered. The subrogee has no greater rights against a third party by virtue of its status as the insurer. *Silva v. Home Indemnity Co.,* 416 A.2d 664, 666 (R.I.1980); *Aetna Ins. Co. v. Gilchrist Bros., Inc.,* 85 N.J. 550, 428 A.2d 1254, 1259 (1981); *Insurance Co. of North America v. Carnahan,* 446 Pa. 48, 284 A.2d 728, 729 (1971). Aetna has only the rights that it would have if it, rather than Ashley, had entered into the burglar alarm service contract with Wells Fargo. Aetna was on constructive notice of the provisions of the burglar alarm service contract because it occupies the shoes of its insured; and a party is presumed to know the contents of a document it signed. *O. Ahlborg & Sons, Inc. v. Interior Systems, Inc.,* 528 A.2d 739, 742 (R.I.1987). Therefore, Aetna, as subrogee, cannot escape the limitation of liability clause in the service contract between its subrogor, Ashley, and Wells Fargo. *St. Paul Fire & Marine Ins. Co. v. Guardian Alarm Co. of Michigan,* 115 Mich.App. 278, 320 N.W.2d 244 (1982).

■ Aetna's second claim, that there are genuine issues of material fact as to

whether the burglar alarm service contract is void as an unconscionable contract of adhesion—rendering erroneous the district court's grant of summary judgment—likewise cannot be sustained. In order to establish unconscionability, a party must prove that (1) there is an absence of "meaningful choice" on the part of one of the parties; and (2) the challenged contract terms are "unreasonably favorable" to the other party. *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C.Cir. 1965); *Leasing Service Corp. v. Graham*, 646 F.Supp. 1410, 1418 (S.D.N.Y.1986) (indicia of unconscionability include disproportionate bargaining power, non-availability of alternatives, and illegal, oppressive, or unreasonable contract); *Grady v. Grady*, 504 A.2d 444, 446–47 (R.I.1986) (quoting *Hume v. United States*, 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393 (1889) ("a court w[ill] usually refuse to enforce a contract on the ground of unconscionability only when the inequality of the bargain was so manifest as to shock the judgment of a person of good sense and when the terms were so unreasonable that 'no man in his senses and not under delusion, would make on the one hand, and as no honest and fair man would accept on the other'....")). The party seeking to invalidate a contract on the ground of unconscionability bears the burden of demonstrating that the contract in question is unconscionable. *Kerr-McGee Corp. v. Northern Utilities, Inc.*, 673 F.2d 323, 329 (10th Cir.1982).

On appeal, Aetna argues that it meets the first prong of the *Walker-Thomas* test for unconscionability—lack of meaningful choice—because Ashley was required by its insurer to enter into the contract or face either cancellation of its policy or skyrocketing rates, and because even if it had tried to purchase the same type of burglar alarm services from another vendor, it could not have avoided the limitation of liability clause because virtually all major vendors of burglar alarm systems include a similar clause in their form contracts. Aetna fails, however, to articulate how it meets the second prong of the *Walker-Thomas* test—that the limitation of liability clause is "unreasonably favorable" to Wells Fargo because it limits the liability of Wells Fargo for losses to purchasers of the burglar alarm system, even if such losses have been caused by Wells Fargo's negligence. Without deciding whether Aetna has met the first prong, we hold that, as a matter of law, Aetna has failed to allege facts in support of its position that the clause was "unreasonably favorable" to Wells Fargo. Accordingly, the contract was not unconscionable.

Courts, including the Supreme Court of Rhode Island, have repeatedly upheld limitation of liability clauses in burglar alarm service contracts against allegations that they are violative of public policy or unconscionable. *See, e.g., Ostalkiewicz v. Guardian Alarm*, 520 A.2d 563 (R.I.1987); *Fretwell v. Protection Alarm Co.*, 764 P.2d 149 (Okla.1988); *Schrier v. Beltway Alarm Co.*, 73 Md.App. 281, 533 A.2d 1316 (1987); *St. Paul Fire & Marine Ins. Co. v. Guardian Alarm*, 115 Mich.App. 278, 320 N.W.2d 244 (1982); *First Financial Ins. Co. v. Purolator Security, Inc.*, 69 Ill. App.3d 413, 26 Ill.Dec. 393, 388 N.E.2d 17 (1979); *Wedner v. Fidelity Security Systems, Inc.*, 228 Pa.Super. 67, 307 A.2d 429 (1973).

*Ostalkiewicz* followed two other cases that presented facts essentially identical to those of the case before it as well as to those of the instant case. The court quoted first from *Fireman's Fund American Ins. Cos. v. Burns Electronic Security Services, Inc.*, 93 Ill.App.3d 298, 48 Ill.Dec. 729, 730–31, 417 N.E.2d 131, 132–33 (1981) as follows:

"The terms of this contract belie unconscionability. The chance of a burglary and the potential loss depended not only on the quality of the alarm but on many factors peculiar to [the store owner] and within [his] knowledge and control. For example, the type and quantity of merchandise in the store, perhaps the prime motivation for a [break-in], was for [the owner] to determine and not Burns [the burglar alarm service company]. It was not unreasonable for Burns to feel that the jeweler was better able than itself to buy any desired amount of insurance at

appropriate rates. Burns could properly insist on the exculpation clause to make certain that the risk of a burglary lay on the jeweler, not on Burns."

"Allocating the risk to [the jeweler] was thus not a bargain 'which no man in his senses, not under delusion, would make ... and which no fair and honest man would accept'.... It does not suggest unfair surprise or oppression.... On the contrary, the [limitation of liability] clause was a commercially sensible arrangement, and the plaintiff is bound by it."

*Ostalkiewicz,* 520 A.2d at 565

The court in *Ostalkiewicz* also discussed *St. Paul Fire & Marine Insurance Co. v. Guardian Alarm Co.,* 115 Mich.App. 278, 320 N.W.2d 244, 247 (1982). In this case also, a loss was sustained by a company because the burglar alarm system did not operate properly. The company's insurer challenged on public policy grounds the limitation of liability clause in the contract between the company and the burglar alarm service company. The court, however, held that both parties to the contract had dealt at arm's length and that the contract clause was manifestly reasonable. The contract was for the installation and maintenance of an alarm service, and the fee was not a premium for theft insurance. Therefore, a clause limiting the alarm service company's liability in the event the alarm system did not work properly was not unconscionable. Neither was it a contract of adhesion, and the parties entered into it fully aware of its terms. *Ostalkiewicz,* 520 A.2d at 565–66.

The Rhode Island Supreme Court cited numerous other cases in which courts had reached similar results, *id.* at 566—including courts in Arizona, California, Washington, D.C., Massachusetts, New Hampshire, and Pennsylvania—and concluded that since the two parties to the burglar alarm service contract in the case before it had dealt at arm's length and it was obvious under the terms of the contract that the burglar alarm service company was not an insurer, the limitation of liability clause was not violative of public policy, nor was it unconscionable.

The factors referred to by the Rhode Island Supreme Court in *Ostalkiewicz* are equally present in the case at bar. The two parties to the contract dealt at arms length in contracting for burglar alarm services. The contract specifically stated that the burglar alarm service company was not an insurer and that it would not be liable for loss through theft. Indeed, Ashley was separately insured against the theft of its merchandise. There is no indication of "unfair surprise or oppression" or that the contract was anything other than a "commercially sensible arrangement." Indeed, no fact alleged by Aetna would challenge any of these conclusions. The mere fact that Wells Fargo's liability under the contract was limited to the amount of Ashley's annual fee, and that it declined to insure against theft without the payment of additional fees, does not necessarily mean that it was "unreasonably favorable" to Wells Fargo. Aetna itself noted that all providers of comparable burglar alarm services have similar limitation of liability clauses in their contracts, a fact that would tend to demonstrate the commercially reasonable nature of the contract.

Aetna has failed entirely to point to any facts that would indicate unconscionability or a contract of adhesion. The limitation of liability clause was set forth in the most conspicuous print on the first page of the contract. The contract was written in plain English; there was no complex legalistic language at all. There was no disparity in sophistication or bargaining power between the parties. The Vice–President of Ashley who signed the contract admitted in his deposition that he was aware of and understood the limitation of liability clause when he signed the contract, that he did not attempt to negotiate a higher limitation of liability in exchange for higher annual fees—as the contract indicated was possible—and that he did not even attempt to contact competitors of Wells Fargo to learn whether he could obtain comparable services under a contract which imposed no such limit. He merely signed the contract without question.

In the face of the overwhelming weight of authority, we conclude that summary judgment for Wells Fargo was in order.

## MOTION FOR DOUBLE COSTS AND ATTORNEY'S FEES FOR AETNA'S PURSUIT OF THIS APPEAL

Wells Fargo has requested that we assess Aetna costs and attorney's fees pursuant to Fed.R.App.P. 38 and 39 as a sanction for bringing this essentially meritless appeal. The purpose of such penalties is to discourage litigants from wasting the time and monetary resources of both their opponents and the nation's judicial system with legal arguments that do not merit consideration. *Johnson v. Allyn & Bacon, Inc.*, 731 F.2d 64, 74 (1st Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984). In order to find that an appeal is frivolous, we need not find that it was brought in bad faith or that it was motivated by malice. Rather, it is enough that the appellants and their attorney *should* have been aware that the appeal had no chance of success. *Coghlan v. Starkey*, 852 F.2d 806, 809 (5th Cir.1988); *N.L.R.B. v. Catalina Yachts*, 679 F.2d 180, 182 (9th Cir.1982). ("[A]n appeal is frivolous when the result is obvious, or the arguments are 'wholly without merit.'") We have held that appeals were frivolous when the appellant should have realized the weakness of his legal position. *N.E. Alpine Ski Shops, Inc. d/b/a Divers World v. U.S. Divers Co.*, 898 F.2d 287 (1st Cir.1990); *Applewood Landscape & Nursery v. Hollingsworth*, 884 F.2d 1502, 1508 (1st Cir.1989); *Natasha, Inc. v. Evita Marine Charters, Inc.*, 763 F.2d 468, 472 (1st Cir.1985).

Aetna's appeal in this case was wholly without merit because the result was obvious. The overwhelming weight of precedent militates against Aetna's position. There is no support in the case law for Aetna's theory that the limitation of liability clause in Ashley's contract should not be applied against Ashley's insurer. Furthermore, Aetna has set forth no facts whatsoever to support its theory that the contract between Wells Fargo and Ashley was "unreasonably favorable" to Wells Fargo to the point of rendering it unconscionable.

The mere allegation that the other party declined to provide certain additional services in the absence of payment of an additional fee is hardly sufficient to demonstrate that the arrangement was "unreasonably favorable" to the other party. We have been able to discover no cases holding that a limitation of liability clause in a burglar alarm service contract is unconscionable; and numerous cases have held to the contrary. Likewise, Aetna has alleged no facts that would justify an exception to this universal rule. As a federal court sitting in diversity we are, of course, bound by the applicable state law. Unlike the high court of a state, we have no leeway to change that law even if we wished to do so.

Because Aetna had no legitimate ground for pursuing this appeal, Aetna and its attorney shall be required to pay double costs and all reasonable attorney's fees expended by Wells Fargo in defending this appeal up to a maximum of $4,000 in attorney's fees.

*Affirmed.*