March 10, 1993 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2001
JORGE SARIT AND DENNIE ESPAILLAT,

Plaintiffs, Appellees,

v.

U.S. DRUG ENFORCEMENT ADMINISTRATION, ET AL.,

Defendants, Appellants.

ERRATA SHEET

The opinion of this court issued on February 23, 1993, is

amended as follows:

Page 8, line 6 from the bottom: "statue" should read

"statute".

February 23, 1993

UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 92-2001

JORGE SARIT AND DENNIE ESPAILLAT,

Plaintiffs, Appellants,

v.

U.S. DRUG ENFORCEMENT ADMINISTRATION, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Raymond J. Pettine, Senior U.S. District Judge]

Before

Torruella, Circuit Judge,

Bownes, Senior Circuit Judge,

Cyr, Circuit Judge.

David N. Cicilline for appellants.

Rachel V. Lee, Trial Attorney, Civil Division, United States

Department of Justice, with whom Stuart M. Gerson, Assistant Attorney

General, United States Department of Justice, Helene M. Goldberg,

Director, Torts Branch, Civil Division, United States Department of

Justice, Michael P. Iannotti, Assistant United States Attorney for the

District of Rhode Island and Lincoln C. Almond, United States Attorney

for the District of Rhode Island were on brief, for appellees.

February 23, 1993

BOWNES, Senior Circuit Judge. This case involves

plaintiffs-appellants' attempts to recover $41,448.00 in U.S.

currency, which was seized by the United States Drug

Enforcement Administration ("DEA") and has now been

forfeited. In their civil action under 28 U.S.C. 1331

against the DEA and its agents, plaintiffs appeal two rulings

by the district court. First, plaintiffs challenge the

court's grant of partial summary judgment for the defendants

upon its finding that plaintiffs had received

constitutionally adequate notice of the administrative

forfeiture proceeding. Second, plaintiffs challenge the

court's dismissal of the case on the basis that, once it

granted partial summary judgment on the Fifth Amendment

notice claim, it no longer had jurisdiction to hear

plaintiffs' Fourth Amendment claim. We affirm the decision

of the district court.

I.

Background

The procedural background of this case is important

and we rehearse it in detail, proceeding chronologically.

On July 28, 1989, DEA agents seized $41,448.00 from the

plaintiffs' then-residence located at 114 Alvin Street in

Providence, Rhode Island. The attendant search was conducted

without a warrant. On August 21, 1989, plaintiffs' counsel

filed a motion pursuant to Fed. R. Crim. P. 41(e),1 seeking

return of the currency. On September 1, Assistant U.S.

Attorney Michael Iannotti objected to this motion and filed a

memorandum of law which has played a focal role in the

arguments before this court. In that memorandum, he informed

plaintiffs and the district court that the currency was being

held for administrative forfeiture pursuant to Title 21

U.S.C. 881(d) and Title 19 U.S.C. 1607. The memorandum

provided the seizure number that had been assigned to the

currency. The memorandum also stated that "a notice [would]

be sent to all those who may have an interest in the

currency," and that "publication [would] commence within the

next two months." The Assistant U.S. Attorney averred that

the assignment of a seizure number would permit the

plaintiffs "at any time, without waiting for the DEA to take

any further action, to file a claim and cost bond with the

DEA thus causing the DEA to refer the matter to the U.S.

Attorney for the initiation of judicial forfeiture

proceedings" (emphasis in original).

1 Fed. R. Crim. P. 41(e), Motion for Return of Property,
provides in pertinent part:

A person aggrieved by an unlawful search and
seizure or by the deprivation of property may move
the district court for the district in which the
property was seized for the return of the property
on the ground that such person is entitled to
lawful possession of the property.

-5-

On or about September 19, the DEA sent notice of

the administrative forfeiture proceeding by certified mail to

114 Alvin Street, where the currency had been seized. The

notice contained required information, not included in the

memorandum, concerning procedures to be followed, deadlines

to be met, and the right of a petitioner to proceed in forma

pauperis in lieu of the posting of a cost bond. This notice

was subsequently returned to the DEA "unclaimed." The DEA

made no further attempts to notify the plaintiffs or their

counsel of the pending forfeiture other than by publication.

On September 21, following a conference with the

court pursuant to the 41(e) motion, plaintiffs sent a letter

to the DEA advising it of their intention to file a claim

under the Federal Tort Claims Act. The first publication

notice, marking the beginning of the twenty-day period after

which plaintiffs' right to file a claim and to post a cost

bond would expire, appeared in the newspaper USA Today, on

September 27. On October 13, the district court denied the

plaintiffs' 41(e) motion on equitable grounds, deferring to

the administrative forfeiture proceedings. The plaintiffs'

right to file a claim with the DEA expired on October 17. On

November 2, the administrative forfeiture was decreed and

entered.

-6-

On November 8, the plaintiffs, having procured

money to post a cost bond, filed a formal claim with the DEA.

Plaintiffs also moved for reconsideration of their 41(e)

motion. On December 21, defendants objected to the motion

for reconsideration and included, in their accompanying

memorandum, the information that the currency had already

been administratively forfeited. The court denied

plaintiffs' motion as moot because the forfeiture had been

completed. After learning that their property had been

forfeited, plaintiffs filed a motion to vacate the forfeiture

on December 29, which motion was dismissed by the court for

lack of jurisdiction. Underscoring its awareness that

plaintiffs had been trying to resolve this matter for several

months, the court advised plaintiffs in its order that the

proper method for collateral attack was a civil rights action

under Title 28 U.S.C. 1331.

Thereafter, plaintiffs filed a civil rights action

against the DEA and its agents alleging violations of their

rights under the Fifth Amendment, claiming insufficient

notice of the administrative proceeding, and under the Fourth

Amendment, claiming that the currency was seized in the

course of a warrantless, non-consensual search. The

district court initially denied defendants' motions to

dismiss and for summary judgment, finding that the plaintiffs

had stated a valid cause of action under 28 U.S.C. 1331, by

-7-

pleading violations of the Fourth and Fifth Amendments, and

that sovereign immunity was waived under the Administrative

Procedures Act, 5 U.S.C. 701 et seq. The court found

summary judgment inappropriate because of a dispute regarding

consent in the Fourth Amendment claim, and the need for more

evidence on the issue of adequate notice underlying the Fifth

Amendment claim.

Both parties later filed motions for partial

summary judgment on the issue of the adequacy of notice. The

district court, on July 15, 1991, granted partial summary

judgment for the defendants on the notice issue, finding it

constitutionally sufficient that the government had sent

notice to the address from which the currency had been

seized. The court buttressed its conclusion with the fact

that plaintiffs had received the Assistant U.S. Attorney's

September 1 memorandum putting them on notice that a

forfeiture proceeding would ensue.

Trial on the Fourth Amendment issue began on March

11. The defendants moved to dismiss the case for lack of

jurisdiction. The plaintiffs moved for reconsideration of

the court's grant of partial summary judgment on the notice

issue. Upon deciding not to alter its grant of summary

judgment, the court dismissed the case for lack of

jurisdiction finding that, because the notice issue had been

resolved against plaintiffs, they thereby lost the waiver of

-8-

sovereign immunity that had allowed the court to entertain

the case in the first instance.

II.

Discussion

A. Notice/Due Process

We begin by addressing plaintiffs' claim that

defendants failed adequately to notify them of the

administrative forfeiture proceeding. Because the district

court granted defendants' motion for summary judgment on this

issue, our review is plenary, and we construe all factual

inferences in favor of plaintiffs. See Damaris Rivera-Ruiz

v. Leonardo Gonzalez-Rivera, No. 92-1558, slip. op. at 2 (1st

Cir. Jan. 5, 1993) (citing E.H. Ashley & Co. v. Wells Fargo

Alarm Servs., 907 F.2d 1274, 1277 (1st Cir. 1990)).

Notice of impending forfeiture proceedings involving

seizures valued at $500,000 or less is governed by Title 19

U.S.C. 1607, which provides in pertinent part:

[T]he appropriate customs officer shall cause a
notice of the seizure of such articles and the
intention to forfeit and sell or otherwise dispose
of the same according to law to be published for at

-9-

least three successive weeks in such manner as the
Secretary of the Treasury may direct. Written
notice of seizure together with information on the
applicable procedures shall be sent to each party
who appears to have an interest in the seized
article.

The regulations interpreting the publication requirement

provide for publication in "a newspaper of general

circulation in the judicial district in which the processing

for forfeiture is brought." 21 C.F.R. 1316.75(a) (1992).

The publication notice must do the following:

(1) Describe the property seized and show the motor
and serial numbers, if any; (2) state the time,
cause, and place of seizure; and (3) state that any
person desiring to claim the property may, within
20 days from the date of first publication of the
notice, file with the custodian or DEA Asset
Forfeiture Section a claim to the property and a
bond with satisfactory sureties in the sum of
$5,000 or ten percent of the value of the claimed
property whichever is lower, but not less than
$250.

21 C.F.R. 1316.75(b) (1992).

There is no dispute that defendants sent notice

with all required information to plaintiffs' last known

address, the address from which the currency was seized.

There is also no dispute that defendants issued proper notice

by publication. Thus, defendants met the requirements of the

statute.

Plaintiffs contend that defendants failed to

satisfy the notice requirements of the Due Process Clause of

the Fifth Amendment. Relying upon the Supreme Court's

opinion in Mullane v. Central Hanover Bank & Trust Co., 339

-10-

U.S. 306, 314 (1950), plaintiffs argue that the notice in

this case was not "reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their

objections." Plaintiffs do not facially challenge the notice

provisions in the statute, but draw our attention to special

"circumstances" affecting the question of whether the DEA's

notice was so "reasonably calculated." See id.

It is plaintiffs' position that the DEA was fully

aware of their interest in the seized currency, given their

pursuit of their 41(e) motion, and their letter to the DEA

informing the DEA that they intended to take action under the

FTCA. Plaintiffs point out that the DEA also was aware of

their representation by counsel and of their counsel's

identity and address.2 Once the DEA received an indication

that the notice had been returned "unclaimed," plaintiffs

assert, it would have been simple to ascertain from counsel

their current address, as would it have been to notify their

counsel directly of the pending forfeiture. Cf. Robinson v.

Hanrahan, 409 U.S. 38, 40 (1972) (per curiam) (citing Mullane

for the proposition that notice by publication was

insufficient where plaintiffs' names and addresses were known

or "easily ascertainable").

2 Plaintiffs treat the government, the U.S. Attorney for
Rhode Island and the DEA in Washington, as a single entity.

-11-

We find that the DEA acted reasonably on the

information it had when notice was sent by mailing notice to

the address from which the property was seized. We need

determine only whether the DEA's duty changed in the light of

its subsequent discovery that the mailed notice had been

ineffective. Given plaintiffs' vigorous (although tardy)

pursuit of their claim, the fact that the government had been

involved in ongoing court action on the very issue of the

seizure of plaintiffs' currency, the government's awareness

of plaintiffs' representation by counsel, and the frowned

upon treatment of forfeitures, the call is a close one. See

generally United States v. One 1936 Model Ford V-8 Deluxe

Coach, 307 U.S. 219, 226 (1939) ("Forfeitures are not

favored; they should be enforced only when within both letter

and spirit of the law."). Nevertheless, Mullane counsels us

to consider all of the circumstances, and we find in this

case other pertinent factors, including the government's

memorandum and the conduct of plaintiffs' counsel, which

compel us to uphold the finding of the district court. For

the reasons that follow, we hold that defendants met the

minimum threshold requirements of due process.

1. Mullane and its Progeny

We note at the onset that while Mullane clearly

contemplates inquiry into the "peculiarities" and the

-12-

"practicalities" of a given case, it has not generally been

interpreted to require a party to make additional attempts

beyond notice that is legally satisfactory at the time it is

sent. See Mullane, 339 U.S. at 314-15. The Court has read

an implicit bad faith standard into the notice inquiry,

overturning notice even where formal procedures were followed

if the notifying party knew or had reason to know that notice

would be ineffective. See, e.g., Robinson v. Hanrahan, 409

U.S. 37 (1972) (per curiam) (in forfeiture action, notice

mailed to interested party's home address was inadequate

where government knew party was incarcerated awaiting trial,

and where party remained in custody throughout forfeiture

proceedings and did not receive notice until his release);

Covey v. Town of Somers, 351 U.S. 141 (1956) (in foreclosure

action, notice by publication, mailing and posting was

inadequate where individual involved was known by the town to

be mentally disabled and under the protection of a guardian).

Knowledge of the likely effectiveness of the notice is

measured from the moment at which the notice was sent.

Virtually all of the cases relied upon by

plaintiffs share the feature--missing from this case--that

the government knew at the time the notice was sent that the

notice was likely to be ineffective.3 See Fisher v.

3 Only in one case cited by plaintiffs did the court
require the DEA, absent any evidence of bad faith, to make
additional attempts to notify the defendant when notice was

-13-

Stutman, Nos. 85-3133-MA, 85-4307-MA, 1987 U.S. Dist. LEXIS

10682, at *6-7 (D. Mass. Nov. 6, 1987)(DEA sent notice of

forfeiture to invalid address when they had correct address

in their possession); Gutt v. United States, 641 F. Supp.

603, 606 (W.D. Va. 1986) (DEA mailed notice to Gutt's hotel

with knowledge that he no longer resided there and failed to

apprise attorney who specifically had requested to be

informed in writing); Cepulonis v. United States, 543 F.

Supp. 451, 452 (E.D.N.Y. 1982) (DEA sent notice to party's

home address when party was incarcerated); cf. Vance v.

United States, 676 F.2d 183, 187 (5th Cir. 1982) (notice by

publication inadequate where government knew business

claimant was engaged in and claimant's address); Jaekel v.

United States, 304 F. Supp. 993, 999 (S.D.N.Y. 1969)

(government could not rest on publication notice where it

knew claimant's name and address).

Thus, courts are reluctant under Mullane to extend

a notifying party's duty beyond initial satisfactory notice.

Only exceptional circumstances would compel us to so extend

the DEA's duty, absent indication that it knew or should have

known that the notice would be ineffective.

returned unclaimed. See Montgomery v. Scott, 802 F. Supp.

930 (W.D.N.Y. 1992). Interestingly, the court relied upon
the fact that the plaintiff was being prosecuted in a
criminal action and that the DEA could have reached him
through that vehicle. Unlike the case before us, in
Montgomery, the claimant had no actual notice whatsoever of

the pendency of the forfeiture proceeding.

-14-

2. Circumstances Affecting the Adequacy of the Notice

Rather than uncovering exceptional circumstances

compelling us to find that the government had a duty over and

above reasonable and technical satisfaction of the statutory

requirements, we find that the damage done by the ineffective

notice could and ought to have been stemmed by plaintiffs'

counsel. The Assistant U.S. Attorney's memorandum to the

district court objecting to plaintiffs' Rule 41(e) motion put

counsel on notice that a forfeiture proceeding would ensue.

Even though, as counsel for plaintiffs argued, the memorandum

did not specify an exact time of publication, and thus

counsel lacked a precise indication of the date from which

the twenty-day period would run, he certainly had sufficient

general notice of the risk that the property would be

forfeited within the coming months if action were not

taken.4 The statute covering forfeitures (cited in the

memorandum) and the regulations interpreting it, were

available to counsel. The regulations plainly explain the

consequence of forfeiture in twenty days. Counsel had only

to look to these sources.

4 The Assistant U.S. Attorney's memorandum was filed on
September 1, 1989. The DEA could have published notice,
thereby beginning the twenty-day period during which
plaintiffs could challenge the forfeiture, any time after
that date. Plaintiffs' did not file a formal claim with the
DEA until November 8, more than two months later.

-15-

We also do not credit plaintiffs' argument that the

Assistant U.S. Attorney's reference to the plaintiffs'

ability to initiate action "at any time," caused confusion,

in effect sanctioning plaintiffs' delay. Although the

memorandum might well have confused plaintiffs had it gone to

them directly, it ought not to have confused their counsel.

Counsel is charged with knowledge of the law, and that

knowledge is imputed to plaintiffs. Moreover, in the context

in which the phrase appeared, we do not find that the

statement, "at any time," was deliberately misleading. The

statement was part of the government's argument that the

court should decline to exercise its equitable powers under

Rule 41(e), because of the availability of the at-law remedy

provided by the forfeiture statute and regulations. The

argument pointed out the plaintiffs' ability to move under

Rule 41(e) more quickly than the government could process an

administrative forfeiture. The U.S. Attorney was making the

point that no undue delay would be caused plaintiffs, who

could go ahead and challenge the administrative proceeding

without waiting, should the court decide to defer to that

proceeding.

In addition to putting counsel on notice of the

forfeiture, the memorandum contained a seizure number, which

counsel could have used to ascertain the status of the

action, and to obtain from the DEA the anticipated date of

-16-

publication notice. Although the duty of providing notice

lies plainly with the government, once the plaintiffs and

their counsel were aware that notice of the forfeiture would

be sent in the ensuing two months, they could have notified

the DEA of their own change of address--they were in the

better position as far as that information was concerned.

Plaintiffs' explanation for their delay in posting

the cost bond and thereby challenging the forfeiture was

their difficulty in coming up with the funds to do so. It is

unfortunate that plaintiffs did not receive the notice mailed

by the DEA which plainly explains the right of a poor and

needy claimant to proceed in forma pauperis in lieu of

posting the cost bond. Once again, however, plaintiffs were

represented by counsel; counsel is charged with knowledge of

his clients' rights to proceed in forma pauperis, and

counsel's knowledge is imputed to his clients.

We are not entirely unsympathetic to plaintiffs'

argument that the circumstances affecting notice were altered

by the government's ongoing involvement with plaintiffs in

litigation over the return of the seized property and by

plaintiffs' persistent pursuit of their rights. No doubt the

government could have ascertained from plaintiffs' attorney

their current address. We are also troubled by the DEA's

choice of publication notice in USA Today, which we do not

consider a particularly effective notice vehicle for

-17-

Providence, Rhode Island. The regulations, however, require

only a publication "of general circulation in the judicial

district in which the . . . forfeiture is brought," and we

find no violation of due process in this regard. 21 C.F.R.

1316.75(a). The government's conduct simply did not rise to

a violation of the due process clause of the Fifth Amendment.

B. Dismissal for Lack of Jurisdiction

We next review the district court's dismissal of

the case on the basis that it lost jurisdiction to hear the

remaining Fourth Amendment claim once the notice issue was

resolved against plaintiffs. This issue poses a pure

question of law. Therefore, our standard of review is

plenary. See Liberty Mutual Ins. Co. v. Commercial Union

Ins. Co., 978 F.2d 750, 757 (1st Cir. 1992).

Because the plaintiffs' Fourth Amendment claim is

directed at the DEA, an agency of the United States, this

issue involves the United States' waiver of its sovereign

immunity. Only an express waiver of sovereign immunity will

give a court jurisdiction to hear a claim against the United

States. Lehman v. Nakshian, 453 U.S. 156, 161 (1981). The

Administrative Procedures Act, 5 U.S.C. 702, provides such

-18-

a waiver for certain forms of equitable relief.5 That

waiver is, however, limited by APA, 5 U.S.C. 701.

Specifically relevant to this case is 701(a)(1), which

limits waiver where "statutes preclude judicial review." The

issue presented is whether the forfeiture statute and the

regulations implementing it, by providing an avenue for

judicial relief, constitute a statute precluding review

within the meaning of 701(a)(1).

The district court originally obtained jurisdiction

over this case due to plaintiffs' claim that constitutionally

deficient notice prevented them, in the first instance, from

meeting the deadlines necessary to pursue judicial relief as

provided by the forfeiture statute and regulations. Whereas

most challenges to forfeiture would be foreclosed by a

5 Administrative Procedures Act, 5 U.S.C. 702, provides
in pertinent part:

A person suffering legal wrong because of agency
action, or adversely affected or aggrieved by
agency action within the meaning of a relevant
statute, is entitled to judicial review thereof.
An action in a court of the United States seeking
relief other than money damages and stating a claim
that an agency or an officer or employee thereof
acted or failed to act in an official capacity or
under color of legal authority shall not be
dismissed nor relief therein be denied on the
ground that it is against the United States . . .
Nothing herein (1) affects other limitations on
judicial review or the power or duty of the court
to dismiss any action or deny relief on any other
appropriate legal or equitable ground; or (2)
confers authority to grant relief if any other
statute that grants consent to suit expressly or
impliedly forbids the relief which is sought.

-19-

plaintiffs' failure to utilize the mechanism for obtaining

judicial relief provided in the forfeiture statute and

regulations, courts have entertained challenges to the

adequacy of notice, reasoning that the mechanism is not

available to a plaintiff who is not properly notified of the

pending forfeiture. See, e.g., Marshall Leasing, Inc. v.

United States, 893 F.2d 1096, 1102-03 (9th Cir. 1990); Willis

v. United States, 787 F.2d 1089, 1092-93 (7th Cir. 1986).

Once the district court found, as have we, that

notice was constitutionally sufficient, it further determined

that 701(a)(1) applied to deny the court jurisdiction over

the remainder of the case. The court found that plaintiffs

had had the means available under the forfeiture statute to

take the case to a judicial forum, and that they had failed

to do so. See Sarit v. Drug Enforcement Admin., 796 F. Supp.

55, 59 (D.R.I. 1992) ("The forfeiture statute `clearly makes

available to a claimant invoking the remedy an appropriate

forum in which to test the legality of the contested

seizure.'" (citation omitted)). Concluding that the

forfeiture statute was a "statute" which "preclude[d] review"

under 701(a)(1), because the statutory scheme provided an

avenue for judicial relief, the district court dismissed the

case.

The Supreme Court has held that in assessing

whether Congress intends to preclude judicial review, the

-20-

intention need not be found in the express language of the

statute, but should be determined from the structure of the

statutory scheme and from its objectives. See Block v.

Community Nutrition Inst., 467 U.S. 340, 345 (1984). The

district court correctly interpreted 701(a)(1) to find that

the forfeiture statute precluded judicial review in this

case.

Plaintiffs ask us to extend the exception for

constitutionally deficient notice to hear the merits of their

Fifth Amendment claim. It is their position that, even if

the notice was constitutionally adequate, it still was not

effective. In practical terms, plaintiffs claim, they had no

knowledge of the deadlines for filing a cost bond. Absent a

legal defect in the notice, however, we cannot correct any

residual ineffectiveness if such there be, by extending

jurisdiction where Congress has spoken otherwise. Once

again, we are sympathetic with plaintiffs' frustrated

attempts to obtain a hearing on the merits. We are, however,

bound by the rule of law and the adversary process. We

cannot come in, deus ex machina, and save a claim where

notice is constitutionally sufficient and any failures in its

effectiveness should have been corrected by plaintiffs'

counsel.

C. Equitable Jurisdiction

-21-

Plaintiffs' final request is that we reach their

Fourth Amendment claim by invoking our powers of equitable

jurisdiction. The government, in its brief, argued that the

issue was not raised below. At oral argument, attorney for

plaintiffs claimed that the issue had been briefed for the

district court. We find, however, no evidence in the record

that this issue had been raised before the district court.

We are, therefore, precluded from entertaining it on appeal.

See United States v. Curzi, 867 F.2d 36, 44 (1st Cir. 1989);

Johnston v. Holiday Inns, Inc., 595 F.2d 890, 894 (1st Cir.

1979).

The decision of the district court is affirmed.
affirmed

-22-