10 F.3d 805
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES of America, for u/b/o Luis A. Cabrera, S.E. A
Special Partnership, Plaintiff, Appellee,
v.
SUN ENGINEERING ENTERPRISES, INC., AND Cna Casualty of
Puerto Rico, Defendants, Appellants.
 No. 93-1541.
 United States Court of Appeals,
First Circuit.
 November 29, 1993
 
 Appeal from the United States District Court for the District of Puerto Rico
 Federico Lora-Lpez for appellants.
 Thomas Doran-Gelabert, with whom Eduardo Castillo-Blanco was on brief for appellee.
 D. Puerto Rico
 AFFIRMED
 Before Breyer, Chief Judge, Coffin, Senior Circuit Judge, and Torruella, Circuit Judge.
 Per Curiam.
 
 
 1
 This case concerns an action brought under the Miller Act, 40 U.S.C. Sec. 270a-f (1986), in the name of the United States for the use and benefit of Luis A. Cabrera, S.E. ("Cabrera"), a subcontractor, against Sun Engineering Enterprises, Inc. ("Sun Engineering"), a general contractor, and its surety, CNA Casualty of Puerto Rico ("CNA"). In the complaint, Cabrera claimed money it was due under a subcontract with Sun Engineering. After a non-jury trial, the United States District Court for the District of Puerto Rico awarded Cabrera $44,769.25. Sun Engineering then filed this appeal claiming that the district court improperly amended the pre-trial order at trial, and that there was insufficient evidence to support the court's findings of fact. For the reasons stated herein, we affirm.
 
 I. BACKGROUND
 
 2
 We review the facts in favor of the prevailing party at trial, Cabrera. See American Title Ins. Co. v. East West Financial Corp., 959 F.2d 345, 346 (1st Cir. 1992). Sun Engineering is a construction company which was the prime contractor for a federal project involving partially renovating the United States General Post Offices in San Juan, Puerto Rico ("the Project"). Cabrera was a subcontractor on the Project. On December 21, l989, Mr. Luis Cabrera submitted a price quotation to Mr. Francisco Jimenez, the president of Sun Engineering, which detailed, item by item, the work which the Project blueprints and specifications required with respect to supplying and installing vinyl floors, dry wall partitions, and acoustical ceilings. The quotation estimated the cost of the work to be $106,707.35.[1] Mr. Cabrera and Mr. Jimenez then discussed the precise terms of the quotation. On January 8, l990, Sun Engineering sent a letter to Cabrera accepting Cabrera's December 21, l989 quotation. Although the parties had negotiated some changes to the work specified in the quotation, and a reduced "estimated" contract price of $80,000, an absolute price for the contract was never agreed upon. Rather, Cabrera and Sun Engineering informally agreed that Sun Engineering would pay Cabrera based on the work Cabrera actually performed.
 
 
 3
 After the contract was formed, Cabrera commenced work. During the course of the Project, Mr. Jimenez verbally requested that Cabrera perform additional work not encompassed by the original contract. This work involved floor underlays. Mr. Ismael Elas, the designer of the Project who also served as the Project inspector for the Post Office, also verbally requested Cabrera to make changes with respect to some partitions it was installing. Cabrera completed all work required on the Project by June 5, l99l.
 
 
 4
 Cabrera billed Sun Engineering $105,495.39 for the work it performed. Sun Engineering made progress payments to Cabrera totalling $60,726.14. Sun Engineering refused to pay Cabrera the balance of $44,769.25.
 
 
 5
 Cabrera then filed suit. As its defense, Sun Engineering claimed that the contract was for a total price of $80,000, and therefore, Sun Engineering only owed Cabrera $l9,273.86. Sun Engineering also claimed that Cabrera negligently performed its work, and delayed the completion of the Project.
 
 
 6
 After trial, the district court found that the parties entered into an informal contract. In accordance with the contract, Cabrera was entitled to be paid $105,495.39 for the work it had performed on the Project. The court found that Cabrera was not responsible for any Project delays. Because Sun Engineering had only paid Cabrera $60,726.14, the court entered judgment in Cabrera's favor in the amount of $44,769.25.
 
 
 7
 Sun Engineering then filed this appeal. Sun Engineering makes three arguments on appeal. Sun Engineering contends that 1) by allowing a modification of the pre-trial order at trial, the district court permitted Cabrera to introduce evidence with respect to the cost of the contract that contradicted a stipulated fact, and changed Cabrera's theory of its case, in violation of Fed. R. Civ. P. 16(e); 2) the evidence presented at trial did not support the district court's conclusion that valid change orders were issued to Cabrera; and 3) the record does not support the district court's finding that Cabrera was not responsible for Project delays. Sun Engineering's arguments are meritless.
 
 II. THE RULE 16 CHALLENGE
 
 8
 In the final pre-trial order, the parties stipulated that "the agreed price on said subcontract was $80,000." At trial, Cabrera introduced its December 21, l989 quotation for $106,707.35 as an exhibit. Sun Engineering objected to the introduction of this exhibit on the ground that the parties had stipulated that there was a contract for $80,000, and that this evidence, which suggested a different price for the contract, contradicted that stipulation. The court overruled Sun Engineering's objection and permitted Cabrera to introduce the exhibit because the court believed that the quotation was relevant to the negotiations between the parties, and what the parties intended to be the terms of the contract. On appeal, Sun Engineering argues that the court violated Fed. R. Civ. P. 16(e)[2] by effectively amending the pre-trial order at trial and permitting Cabrera to introduce evidence which contradicted a stipulated fact, and which changed Cabrera's theory of its case.
 
 
 9
 A trial court has broad discretion to preserve the integrity and purpose of the pre-trial order. Roland M. v. Concord School Comm., 910 F.2d 983, 999 (lst Cir. l990), cert. denied, 499 U.S. 912 (1991). An appellate court should exercise minimal interference with a trial court's interpretation of a pre-trial order and a court's decision to permit the introduction of evidence, or exclude evidence, based on that interpretation. See Ramrez Pomales v. Becton Dickinson & Co., S.A., 839 F.2d 1, 3 (1st Cir. l988); Geremia v. First Nat'l Bank of Boston, 653 F.2d 1, 5 (lst Cir. l981); 6 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure Sec. 1527, at 279-286 (1990). "Unless there is manifest injustice or the district court has abused its discretion to the point of being arbitrary," the court's ruling will not be disturbed. Nickerson v. G.D. Searle & Co., 900 F.2d 412, 422 (lst Cir. l990); Ramrez Pomales, 839 F.2d at 3.
 
 
 10
 Federal Rule of Civil Procedure l6 provides that at the final pre-trial conference the participants shall formulate a plan for trial. Ramrez Pomales, 839 F.2d at 3. After the pre-trial conference, an order shall be entered reciting the action taken, and this order then controls the subsequent course of the action, unless modified by a subsequent order. Fed. R. Civ. P. l6(d),(e); Ramrez Pomales, 839 F.2d at 3. The interpretation of a pre-trial order is the responsibility of the trial court. A trial court should construe the pre-trial order liberally so that it covers any of the possible legal or factual theories that might be embraced by its language. Geremia, 653 F.2d at 5 (quoting Rodrgues v. Ripley Indus., Inc., 507 F.2d 782, 787 (lst Cir. l974) (citing 6 C. Wright & A. Miller, Federal Practice & Procedure Sec. l527, at 609 & n.47 (l971))).
 
 
 11
 Contrary to Sun Engineering's contention, the district court did not amend the pre-trial order. Rather, the court reviewed the pre-trial order, and based on its interpretation of that order, found that the exhibit Cabrera proposed to introduce was admissible. The district court's actions were not an abuse of discretion. After Sun Engineering objected to the introduction of the exhibit, the court reviewed the factual stipulation in the context of Cabrera's legal theory, which was also set out in the pre-trial order. The court found that the introduction of the exhibit by Cabrera was consistent with its theory of the case. Pursuant to the contract, Cabrera was entitled to be paid on the basis of the work it actually performed. The December 21, l989 quotation and the subsequent change orders established the work that Cabrera was to perform. While the factual stipulation did provide that the agreed cost of the contract was $80,000, the court stated that it would simply defy logic to find that Cabrera stipulated that the absolute price of the contract was $80,000, in light of its theory of the case. Rather, the court found that the only reasonable interpretation of the stipulation was that it referred to an agreed "estimated" contract cost of $80,000. The court acted within its discretion in interpreting the stipulation and pre-trial order in this manner, and we will not disturb its ruling.
 
 III. THE CHANGE ORDERS
 
 12
 Sun Engineering argues that in light of federal regulations which purportedly require all change orders on government projects to be in writing, the evidence was insufficient to support a finding that valid change orders were issued to Cabrera.
 
 
 13
 An appellate court will review a district court's findings of fact in a bench trial for clear error. Dedham Water Co. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 457 (lst Cir. l992); Fed. R. Civ. P. 52(a).[3] A finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. See Dedham Water, 972 F.2d at 457. Mixed questions of fact and law, which require a court to determine if certain facts possess, or lack, legal significance in a given case, are also reviewed for clear error. Roland M., 910 F.2d at 990. Absent a showing that the court made a mistake of law, we will give effect to the trial's courts findings. Id. at 990-91.
 
 
 14
 The record supports the district court's factual findings that change orders were issued to Cabrera. Mr. Cabrera and Mr. Jimenez testified that after Cabrera submitted the original quotation to Mr. Jimenez detailing the work Cabrera proposed to do, Mr. Jimenez requested that Cabrera make certain changes to the quotation. Mr. Cabrera also offered undisputed testimony that after the parties entered into the original contract, Mr. Jimenez orally requested that Cabrera perform work beyond that encompassed in the contract with respect to floor underlays. Mr. Jimenez and Mr. Elas both testified that Mr. Elas also orally requested Cabrera to do additional work with respect to partitions, that Mr. Jimenez was aware of this request, and that Cabrera made those requested changes.
 
 
 15
 Cabrera claims that even if oral changes were issued to Cabrera, they were of no legal consequence. There is no requirement, however, that change orders to subcontractors on government projects be in writing and approved by the government to be legally binding. Despite Sun Engineering's contention to the contrary, 48 C.F.R. Sec. 43.201 (1992) does not impose such a requirement.[4] Part 43 of the Code of Federal Regulations generally addresses government policies and procedures for preparing and processing contract modifications. 48 C.F.R. Sec. 43.000 et seq. (1992). The regulations are directed to government contracting officers and those parties who contract directly with them. Section 43.20l is specifically directed at the procedures which the government's contracting officer should follow when issuing a change order to its contracting partner. Generally, the relationship covered by the regulation is that between the officer and the prime contractor on a government project. The regulation does not apply to more remote parties, such as subcontractors, who contract solely with the prime contractor. We have been unable to find any other statutory or regulatory requirement which purports to control the prime contractor's relationship with its subcontractors with respect to the logistics of contract modifications, such as change orders.[5]
 
 
 16
 The prime contractor/subcontractor relationship is governed by the terms of the contract between the parties. See, e.g., United States for Control Systems, Inc. v. Arundel Corp., 814 F.2d 193, 196-97 (5th Cir.), modified on other grounds, 826 F.2d 298 (5th Cir. 1987). In the present case, the court found that the contractual dealings between Cabrera and Sun Engineering were informal at best. The parties never signed a final written contract. Moreover, there was no oral or written contractual provision which required that any change orders issued to Cabrera had to be in writing, or approved by the contracting officer, in order to be valid. Therefore, the oral change orders at issue were legally binding, and the district court properly found that Cabrera was entitled to be paid for the work performed pursuant to those orders. This finding is in accord with the general purpose of the Miller Act, 40 U.S.C. Sec. 270a-f (1986), a remedial statute, enacted to assure that all workers and subcontractors on government projects received compensation for their efforts. See F.D. Rich Co. v. United States for Use of Indus. Lumber Co., 417 U.S. 116, 124 (l974).
 
 IV. DELAY CLAIM
 
 17
 Sun Engineering contends that the district court's finding that Cabrera was not responsible for Project delays is unsupported by the record. We disagree and find that the evidence amply supports the court's findings. Mr. Cabrera, Mr. Delgado and Mr. Elas all offered uncontradicted testimony that Cabrera completed all required work on the Project. There was evidence that Cabrera did correct some deficiencies in its work after the scheduled completion date of the Project. With the exception of the testimony of Mr. Jimenez, however, the record is void of any evidence that this "delay" translated into any financial penalty to Sun Engineering. While Mr. Jimenez testified that Sun Engineering was financially penalized for delays which were in fact caused by Cabrera, Mr. Elas offered conflicting testimony to the effect that Sun Engineering was solely responsible for the delays. The trial court refused to credit Mr. Jimenez' testimony. It was well within the court's discretion to determine whether or not it found Mr. Jimenez to be a credible witness. See Dedham Water Co., Inc., 972 F.2d at 461. There was no error in the court's findings.
 
 V. DOUBLE COSTS
 
 18
 Because Sun Engineering filed a frivolous appeal, we find it appropriate to assess a monetary penalty of double costs against it. Federal Rule of Appellate Procedure 38 provides that "[i]f a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." Westcott Constr. Corp. v. Firemen's Fund of New Jersey, 996 F.2d 14, 17 (lst Cir. l993). An appeal is frivolous if the "result was obvious" or the arguments are "wholly without merit." Id. "[I]t is enough that the appellants and their attorney should have been aware that the appeal had no chance of success." E.H. Ashley & Co. v. Wells Fargo Alarm Servs., 907 F.2d 1274, 1280 (lst Cir. l990). Sun Engineering's arguments on appeal are wholly without merit. There is no legal support for Sun Engineering's Fed. R. Civ. P. 16(e) challenge, or its contention that change orders issued to Cabrera had to be in writing to be legally binding. The record also amply supports the trial judge's factual findings, and there are simply no reasonable grounds to challenge the sufficiency of the evidence. We therefore award Cabrera double costs.
 
 
 
 [1]
 At trial, there was some dispute regarding the precise dollar figure of this initial quotation. The present appeal does not in any way turn upon the exact figure of this initial quotation, and for the purposes of this opinion, we will assume that $l06,707.35 was the correct figure
 
 
 [2]
 Federal Rule of Civil Procedure l6(e) provides in pertinent part:
 [A pre-trial order] shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice.
 
 
 [3]
 Federal Rule of Civil Procedure 52(a) provides in pertinent part:
 In all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58.... Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of witnesses.
 
 
 [4]
 48 C.F.R. Sec. 43.201(a) (1992) provides in pertinent part:
 Generally, Government contracts contain a changes clause that permits the contracting officer to make unilateral changes, in designated areas, within the general scope of the contract. These are accomplished by issuing written change orders on Standard Form 30, Amendment of Solicitation/Modification of Contract (SF 30), unless otherwise provided.
 
 
 [5]
 In its brief, Sun Engineering points to the testimony of Mr. Elas and Mr. Delgado, an architect who worked for the Post Office, who both stated that change orders were generally accomplished through written directives. Their testimony, however, also referred to the relationship between the government and the prime contractor